Argued and submitted August 30, 1988, case A46629 reversed and remanded; A46731 affirmed September 13, reconsideration denied November 24, petition for review denied December 28, 1989 (308 Or 660)

STATE OF OREGON,
*Appellant,*

*v.*

FRANK SOUTHARD MUNDT,
*Respondent.*

(87061189; CA A46629 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

SUSAN FRANCES FINCHER,
*Respondent.*

(10-87-04018; CA A46731)
(Cases Consolidated)

780 P2d 234

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David E. Groom, Salem, argued the cause for respondents. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., concurring in *State v. Fincher;* dissenting in *State v. Mundt.*

### ROSSMAN, J.

These criminal cases were consolidated for appeal. In each, the state appeals from an order granting the defendant's motion to suppress items seized during booking procedures. The issue is whether a booking officer who is conducting an administrative inventory of an arrestee's possessions may open a wallet or a purse, including containers found inside the purse, in order to inventory the contents, without violating Article I, section 9, of the Oregon Constitution. We reverse in *State v. Mundt* (CA A46629) and affirm in *State v. Fincher* (CA A46731).

In *Mundt,* defendant was arrested for driving while suspended, taken to the police station and booked. The officer who conducted the booking procedure opened defendant's wallet, which had a wrist watch wrapped around it. He removed a blue, plastic "ID holder." Inside that holder, he found another ID holder made of black leather with a snap closure, which he also opened. There he discovered a clear plastic bag that was rolled up and secured with a piece of tape with "1/2" written on it. The officer testified that, on the basis of his experience, he knew that the bag contained a controlled substance. He also stated that, when he asked defendant if the bag contained cocaine, defendant said, "No, it's crank."

Mundt moved to suppress the contents of the wallet. The trial court concluded that *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1984), applies and granted the motion.

In *Fincher,* defendant was arrested in Eugene for shoplifting, taken to the Lane County Jail and booked. The officer who conducted the booking procedure opened defendant's purse. She removed a cigarette box, a Tylenol bottle and a separate leather pouch[1] and opened them. She found what she believed to be a marijuana cigarette in the cigarette box and marijuana in the bottle. In the leather pouch, she found a razor blade and a flat piece of glass; in her experience, those items are used with cocaine. She also opened a zippered compartment on the inside of the purse and discovered a syringe. The purse also contained $301.12. Two earrings with

---

[1] The trial judge referred to a "leather utility case" in his order. However, the parties and the trial judge referred to a "small leather pouch" at the suppression hearing.

clear, yellow stones and a ring with seven diamonds were also seized, although it is not clear from the record whether they were on defendant's person or in her purse.

Fincher moved to suppress the contents of her purse and all evidence derivative of that search. The trial court granted her motion with regard to all of the items seized, except the syringe.[2] The judge said:

> "The fact is that—and I make the finding in this case —that the jail did, in fact, adopt policies that appear to satisfy the purposes required by [State v.] Atkinson, [298 Or 1, 688 P2d 832 (1984)] - that is, protection of property, elimination of false claims, and protection against injury.

> "The only question remaining, then, under Ridderbush and under Atkinson is do those policies violate any constitutional guarantees. And that's really the only analysis that the Court can get into.

> "* * * * *

> "So I think here it's perfectly okay for an inventory of the search, of the purse to be, to be taken, including the zippered compartment.

> "I think that the problem then begins, under Ridderbush, when you get down to the smaller items that clearly can't be suspected to contain explosives or guns or whatever: the Tylenol bottle, the small leather pouch, the cigarette carton — those are the kinds of things that Ridderbush seems to say would have to be inventoried as they appear and not looked into.

> "* * * * *

> "And so I'm going to hold, if I haven't already, that the search of the purse was lawful but that the search of the leather pouch * * * the Tylenol container * * * and the search of the cigarette box * * * those searches would be unlawful and, therefore, I would grant the Motion to Suppress so far as those items are concerned."

Defendants in both cases argue that the issue of whether a closed container can be opened during a booking inventory procedure without a warrant was answered in State

---

[2] Defendant does not cross-appeal the trial court's refusal to suppress the syringe that was found in the inside zipper compartment of the purse.

*v. Ridderbush, supra,* and that the inventories here were improper under the rule in that case.

◼︎ *Ridderbush* does not control the inventory of a wallet or a purse. Neither a wallet nor a purse is a "closed, opaque container." The black box in *Ridderbush* could have contained anything small enough to fit in it. However, a wallet typically has openings for inserting money, credit cards and other valuables; even when folded shut, it is not "closed" in the way that the box in *Ridderbush* was. A purse usually has compartments for storing money and other valuables and frequently holds a wallet. Because wallets or purses are primarily intended to be used to store valuables, it may be important to discover what is in them, both to protect the owner's property and to prevent the assertion of false claims against the police. *See* ORS 133.455. Both are legitimate purposes for inventories of impounded property. *State v. Atkinson, supra,* 298 Or at 7. Although other containers may also hold valuable property, wallets and purses are uniquely designed for that purpose.

*State v. Atkinson, supra,* 298 Or at 10, permits inventories made pursuant to "a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion." If performed pursuant to a program, an inventory of the contents of a wallet or a purse is permissible.[3] Applying the principles of *Atkinson* and *Ridderbush* to the facts of the cases before us, we hold that the state sustained its burden of proving the legality of the inventory of the purse in *State v. Fincher* and the wallet in *State v. Mundt* by a preponderance of the evidence. *See* ORS 133.693(4).

◼︎ In *Mundt,* the state attached excerpts from the jail's "STANDARD ORDER OF PROCEDURE - JAIL OPERATIONS/EMERGENCY JAIL PROCEDURES" to its memorandum in opposition to defendant's motion to suppress. Specific instructions are given regarding an arrestee's personal property. Booking officers are required to

---

[3] The dissent inflates the *Atkinson* requirements. 98 Or App at 416. The record need not reflect the legislative process by which an inventory policy was adopted. It is sufficient that the evidence shows that such a policy existed and that it was designed and uniformly administered to eliminate individual discretion on the part of the officer conducting the inventory.

" [i]temize all personal property in the possession of the person detained. Contraband is retained as evidence and booked into custody on a property report. When itemizing property circle the number of items listed (i.e., 2 black combs, 6 keys, etc.). Indicate the breakdown of all cash and negotiable checks by coin, currency, and checks. Negotiable check means a check which can be cashed by any person by endorsement of his/her signature. Checks made out to other persons should be listed in the itemized list of property as 'miscellaneous n/neg. ckecks.' If possible all cash should be counted in another person's presence.

"* * * * *

"Anything seized as contraband or evidence should be listed on a receipt which is then attached to the case report."[4]

The instructions require a booking officer to itemize *all* personal property in the possession of an arrestee. They specifically mention cash, checks and other items of value typically found in a wallet or purse. The fact that the word "wallet" does not appear in the instructions is not dispositive of whether the outlined procedure meets the *Atkinson* criteria. It would be impossible to list every type of container that should be opened during a booking. The guidelines obviously were phrased generally to require inventory of *every* type of container designed or objectively likely to contain money or valuables, including wallets.

Those guidelines effectively eliminate any discretion on the part of the booking officer about whether to inventory the contents of a wallet. They provide explicit directions about what and how to itemize property and money of arrestees. At the suppression hearing, the booking officer testified that he had opened defendant's wallet and the ID holders in order to check for currency to inventory. He stated that the "procedure is to go through everything and make an accounting" in order to protect against fraudulent claims. During questioning by the trial court, he indicated that the procedure that he used in regard to defendant's wallet, and wallets generally, was the

[4] According to the dissent, those orders do not authorize the opening of any containers. 98 Or App at 417. The dissent ignores the detailed directions requiring the booking officer to count and indicate "the breakdown of all cash and negotiable checks by coin, currency and checks." Common sense dictates that, in order to make such an accounting, the officer must open containers—like defendant's wallet here —that are apt to contain cash and checks.

procedure that was supposed to be followed. In other words, he did not have discretion *whether* to inventory the contents of a wallet; he had been instructed to do so.

We turn to the evidence in *Fincher*. The record includes excerpts from an "On the Job Training Manual" that is issued to employes who are assigned to the Lane County Corrections Division. That manual instructs booking officers to advise arrestees of the booking procedure, take them to the records counter and perform a frisk search. It then states:

> "Records clerks will issue a receipt listing all property taken and any money the prisoner has. At this point handcuffs can be removed but only after all property has been removed from the counter. The prisoner is asked to sign the receipt. If the prisoner refuses, booking officers are to write refused on space provided for inmate's signature and sign the receipt. An explanation of the inmate's refusal should be noted on the reverse side of the receipt."

Copies of orders posted at the jail are also in evidence. They provide, in pertinent part:

> "F.  INFORM THE BOOK-IN OF THE PROCESS WE FOLLOW AND WHAT HIS/HER RESPONSIBILITIES ARE. Be clear, concise and professional regarding their responsibilities.

> "G.  FRISK SEARCH BOOK-IN AND PLACE ALL PROPERTY AND MONEY ON THE COUNTER FOR THE COMMUNICATIONS RECORDS OFFICER TO LIST AND RECEIPT.

> "* * * * *

> "2.  All personal property such as rings, watches, necklaces, earrings, contents of pockets, etc., is to be receipted by the Communications Records Officer and stored in the records area. Plain wedding bands and jewelry that cannot be removed are the only jewelry items that may be left on the book-in."[5]

---

[5] Captain Sunderland, of the Lane County Sheriff's Department, testified that he issues orders to each employe to search and inventory arrestees and their property thoroughly, including clothing and other personal property. He said that there had been problems with contraband being smuggled into the jail, as well as claims against the county for missing valuables. He stated that the jail's booking procedure was revised in an effort to reduce the number of claims and to keep contraband out. He testified that an effort had been made to conform procedures to the *American*

The booking officer testified on cross-examination that all property is searched and inventoried pursuant to that policy for the purpose of checking for contraband and weapons as well as for valuables.[6] She stated that the contents of defendant's purse were taken out and placed on the counter so that the records officer could make a list of any valuables. She also testified that she has no discretion whether to inventory a purse as part of the booking procedure.

■       Turning to the breadth of the inventory of the contents of the purse in this case, "[t]he degree to which [the] inventorying officer may scrutinize the items uncovered is limited. *See State v. Perry,* 298 Or 21, 688 P2d 827 (1984), * * *. *See also State v. Keller,* [265 Or 622, 510 P2d 568 (1973)]." *State v. Atkinson, supra,* 298 Or at 10; *see also State v. Ridderbush, supra,* 71 Or App at 425. The trial court here was correct: The officer should have listed the containers found in the purse by their outward appearance as "one Tylenol bottle, one cigarette box and one leather pouch." The Tylenol bottle and the cigarette box found inside the purse are not items intended or likely to hold money or other valuables. Rather, like the black box in *Ridderbush,* they are "closed, opaque containers" that may not be opened so that their contents may be inventoried in turn. The leather pouch that was also in the purse poses a closer question than the bottle or the cigarette box. The state does not contend, however, that the evidence compelled the trial court to find that it was a common coin purse specifically designed to hold money. The trial court's finding that, like the bottle and the cigarette box, it was a closed, opaque container, is binding on us. The scope of a valid administrative inventory of an arrestee's possessions does not

---

*Corrections Association Standards Manual for Local Detention Facilities* and the *Oregon Board of Police Standards and Training Manual.* The state introduced excerpts from those documents. *American Corrections Association Manual* 92 provides:

"Written policy and procedure provide for a written, itemized inventory of all personal property of newly admitted inmates and secure storage of inmate property, including money and other valuables. The inmate is given a receipt for all property held until release."

[6] According to her testimony, the booking procedure is a two-step process in which she is responsible for checking the arrestee and her belongings for contraband and weapons to assure the safety and security of the inmates and the staff and the records officer is responsible for inventorying the property placed on the counter and for keeping an accurate record of valuables.

extend to opening such containers, in the absence of additional facts establishing probable cause.[7] *State v. Ridderbush, supra,* 71 Or App at 425.

*State v. Mundt* (CA A46629) reversed and remanded; *State v. Fincher* (CA A46731) affirmed.

**BUTTLER, P. J.,** concurring in *State v. Fincher* and dissenting in *State v. Mundt.*

I concur in *State v. Fincher* (CA A46731). I dissent in *State v. Mundt* (CA A46629).

First, I have serious doubt that the authorized administrative program satisfies the requirements set forth in *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984). In that case, the court pointed out that a court is a judicial body, not a legislative body:

> "It is not our function to decide as a matter of policy how, and for what purpose, automobiles or other private property that come into official custody should be examined. That is a matter for politically accountable officials to decide by laws, ordinances, or delegations of rulemaking authority." 298 Or at 6.

The court's role is to assure that adopted policies and procedures do not violate constitutional guarantees. I understand *Atkinson* to say that, in the first instance, politically accountable officials must adopt the rules by laws or ordinances or must expressly delegate rulemaking authority to the official making the rules. Here, we do not know what authority, if any, the Albany Police Department had to establish booking inventory procedures.

Assuming that the department had authority to adopt procedures, the written rules either exceed the scope of an inventory authorized by *Atkinson* or do not clearly authorize the opening of *any* containers. As the majority points out, the written procedures provide that "all persons taken into custody shall be *searched* as soon as possible. The *search* should extend to articles in the prisoner's possession which

---

[7] In *State v. Smith,* 97 Or App 114, 775 P2d 335, *rev den* 308 Or 315 (1989), we held that the booking officer could open a black compact that was found in the defendant's boot during an inventory, because he had discovered additional facts giving him probable cause to believe that the compact contained a controlled substance.

must be accounted for at the time of release." (Emphasis supplied.) *Atkinson* does not authorize any search; it authorizes an *inventory* of articles in the arrestee's possession. *Atkinson* points out that "[t]he degree to which an inventorying officer may scrutinize the items uncovered is limited," 298 Or at 10, citing *State v. Perry,* 298 Or 21, 688 P2d 827 (1984), and *State v. Keller,* 265 Or 622, 510 P2d 568 (1973). It goes on to point out also that, in *Keller,* the court "distinguished the search of a fishing tackle box within a vehicle from a general inventory of the vehicle, holding the former invalid and stating that 'there is a delicate balance between conflicting public and private interests—the need to search to protect law officers and car owners and the invasion of Fourth Amendment protected interests of private citizens.' " 298 Or at 5.

To the extent that the authorized procedures relied on here authorize a search, as distinguished from an inventory, of defendant's possessions, they exceed the authority that *Atkinson* would permit. On the other hand, if the procedures mean that the police are to inventory all articles in the person's possession, they would conform to *Atkinson,* but would not authorize the opening of closed containers. Those specific instructions, quoted by the majority, 98 Or App at 413, clearly do not authorize the opening of *any* containers. They simply direct the officer to itemize all personal property in the possession of the person detained.

Second, even if the rules on which the state relies were validly adopted and even if they authorized the opening of closed containers to *inventory* their contents, rather than engage in a *search,* we held in *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1984), that the opening of any closed, opaque container during a jail booking procedure is not permissible under Article I, section 9. That is the authority on which the trial court properly relied in this case and which the majority accepts with respect to *State v. Mundt.* The majority, however, contends that a wallet is not a closed container. Perhaps a minor point here is that, when defendant handed his wallet to the booking officer, it had a wristwatch wrapped around it; that is, it was securely closed. The state urges us to overrule or modify *Ridderbush* in both *Mundt* and *Fincher.* The majority has left it intact in *Fincher* but seemingly modifies it in *Mundt.* In my opinion, there is no occasion to overrule or modify the bright-line rule laid down in *Ridderbush;*

the wallet should have been inventoried as "one wallet." The booking officer could inquire of the arrestee what valuables he has in the wallet and, if he says, "None," then note that on the inventory; if he says that he has a specified amount of cash, he should ask the arrestee to display it and then inventory that amount. If the inmate refuses to sign the inventory list, *see* ORS 133.455, that fact should be noted on the inventory.

The majority would distinguish a wallet from an opaque plastic box. Of course, the two items are different. A major distinction, in my view, is that the contents of a wallet are much more likely to be personal in nature than those in an opaque plastic box. Defendant clearly has a privacy right, not an expectation of privacy, in the wallet, *State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988), and there is no emergency or noninvestigative reason to explore the contents of the wallet.

Accordingly, I dissent in *State v. Mundt.*