Argued and submitted March 22, 1991, reversed and remanded for new trial
January 15, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## CHARLES ALLEN WILLHITE,
*Appellant.*

(C890025CR; CA A62315)

824 P2d 419

Steven L. Price, Hillsboro, argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Riggs, Judge.

JOSEPH, C. J.

Riggs, J., dissenting.

## JOSEPH, C. J.

Defendant appeals his convictions for possession of controlled substances. ORS 475.992. He assigns as error the trial court's failure to suppress evidence seized during an inventory of the vehicle that he was driving when he was arrested. We reverse.

Defendant was driving a car borrowed from a friend. A Tigard police officer noticed that the license plates had expired and signalled him to stop. Defendant drove into a restaurant parking lot, parked the car and locked it, then stood at the rear of the car. After checking defendant's identity, the officer arrested him on an outstanding warrant. He explained to defendant that the car would be inventoried and then towed. Defendant told the officer that the car belonged to a friend and requested permission to have it towed to the owner's residence. The officer refused.

A second officer arrived to "dispose of the vehicle." He reached through a broken or open[1] rear ventilation window to unlock a door and then began an inventory. While looking under the seats, he noticed an unusual bulge at the front of the driver's seat. He testified that he had once owned a similar car and sometimes had stored his wallet in approximately the same location, between the seat and the plastic seat cover. He decided to see if any valuables might be causing the bulge.[2] He extracted a small plastic coin purse that was partially open and that he could see was stuffed with a transparent plastic bag containing a "whitish" substance. A field test indicated that it was probably methamphetamine; laboratory tests later revealed that the purse contained both methamphetamine and cocaine.

Defendant does not challenge the legality of the stop or his arrest. He argues that the trial court should have suppressed the controlled substances, because the Tigard

---

[1] At trial, the officer testified that the ventilation window was broken; at the suppression hearing he testified that it was open.

[2] At trial, the officer described the location as "tucked right under the plastic seat cover." At the suppression hearing, he described the location as "beneath the stuffing of the seat and the seat cover." The significance of the distinction between extracting an item from under a seat cover and extracting it from beneath the stuffing of the seat is not before us.

police department's policies for towing and inventorying vehicles are too vague and allow officers too much discretion to satisfy state and federal constitutional requirements under *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). The state argues that Tigard City Code § 10.28.160 gave the police the authority to tow the car; it also argues that the police department's administrative policy memorandum for preparation of vehicles to be impounded allows little or no discretion as to whether an officer will perform an inventory and that, therefore, the procedure used in this case satisfies the *Atkinson* test.

In *Atkinson*, the Supreme Court established a three-part test of the validity of an inventory of an impounded vehicle. First, it must have been lawfully impounded. Second,

> "any inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." 298 Or at 10.

Third, the person performing the inventory must not deviate from the established policy or procedures.[3] Approval of an inventory policy " 'provides no general license for the police to examine all the contents of such automobiles.' " 298 Or at 11 (*quoting South Dakota v. Opperman*, 428 US 364, 380, 96 S Ct 3092, 49 L Ed 2d 1000 (1976) (Powell, J., concurring)).

The court explained that, even if the parties do not raise the issue, "a determination as to the authority under which the police impounded the vehicle is necessary" before a court can uphold a particular inventory. 298 Or at 11. The trial court found sufficient authority to impound the vehicle in an internal police department memorandum directed to

---

[3] The dissent urges that the 3 parts of the test should be read to require:

"(1) that the vehicle be lawfully impounded, (2) that a properly authorized policy eliminate discretion in taking an inventory and (3) that the scope of the inventory be constitutionally permissible." 110 Or App at 575.

That interpretation improperly severs the issue of whether the policy eliminates discretion from the question of whether a particular inventory passes constitutional muster. The question of whether the policy eliminates discretion is precisely *the* constitutional test established in *Atkinson*. If the policy does not sufficiently eliminate discretion — that is, if it does not sufficiently prescribe the scope of the examination of the vehicle — it is constitutionally defective, because it would authorize a warrantless search, not an inventory.

"All Personnel." Here, the state concedes that *Atkinson* required the state to identify some provision of law authorizing taking custody of personal property and that the policy memorandum did not give the officers authority to tow defendant's vehicle.

The state offers the city ordinance referred to above as an alternative basis for the trial court's decision:

> *"Authority to impound improperly parked vehicles.*
>
> "(a) [I]n the event that an operator of a vehicle is arrested and placed in custody and is not in condition to drive the vehicle to a place of safety and there is no other person present who may properly act as agent for such operator to drive the vehicle to a place of safety, such vehicle is declared to be a public nuisance and subject to summary abatement, removal and impounding." Tigard City Code § 10.28.160.[4]

At oral argument, the parties apparently assumed that defendant was, by virtue of his arrest, "not in condition to drive" within the meaning of the ordinance. Defendant argues that the ordinance did not authorize the officers to tow his car, because it was already in "a place of safety." When he was arrested, it was legally parked in a restaurant parking lot, and the restaurant owner had not requested that it be removed. It was not obstructing traffic or otherwise creating a nuisance. The state argues that the car was not in a place of safety, because it was neither safe from vandalism nor protected against being towed at the behest of the restaurant proprietor.

We need not decide that issue because, even if the first part of the *Atkinson* test was satisfied, the second requirement was not.

The "properly authorized administrative program" that the state relies on is a memorandum to Tigard police officers that reads, in its entirety:

> "The officer will complete a Report on all towed vehicles. The Property Inventory will be completed and indicated on the Report. If the property is of great value (i.e., [sic] jewels,

---

[4] We take judicial notice of the ordinance under OEC 202(7). *See also* OEC 201(f). Under these circumstances, if the judgment is correct for that reason, which was not argued below, we may affirm it. *See Bush v. Greyhound Lines, Inc.,* 295 Or 619, 623, 669 P2d 324 (1983).

money, expensive camera [*sic*], portable sample kits, etc.), that property will be noted on the standard Property Receipt Form and will be taken to the Property Room."[5]

The state argues that the same ordinance that it offers to validate the tow also authorized the police department to design and administer an inventory policy. Even assuming that,[6] a particular inventory policy is not "properly authorized" merely because the law permits one.

Politically accountable officials must decide as a matter of policy when, how and for what purposes private property in official custody should be examined. The courts must assure that the policies and procedures adopted do not violate constitutional guarantees. *State v. Atkinson, supra,* 298 Or at 6. For a policy to be properly authorized, it must require a procedure that is rationally related to legitimate governmental interests. Therefore, the justifications offered for the policy have to be considered in determining the validity of the policy and the lawfulness of its execution. *State v. Atkinson, supra,* 298 Or at 10. In this case, the Tigard police department adopted a policy to safeguard the contents of towed vehicles by removing valuable items for storage until the owner could collect them, in order to reduce the assertion of claims against the city that property has been lost or stolen while impounded.

Law enforcement personnel have long been permitted to inventory legitimately seized vehicles for that reason, but only if the inventories are "conducted according to standardized criteria," *Colorado v. Bertine,* 479 US 367, 374 n 6, 107 S Ct 738, 93 L Ed 2d 739 (1987), or "established routine." *Florida v. Wells,* 495 US 1, 4, 110 S Ct 1632, 109 L Ed 2d 1 (1990). In *United States v. Salmon,* 944 F2d 1106, 1120 (3d Cir 1991), the court explained:

---

[5] The only other evidence of any established policy or procedure for conducting the inventory was in the form of a police officer's testimony:

"Prior to [the tow truck's] coming to the scene, I *usually* will take a look through the vehicle, see if there is [*sic*] any valuables. As according to our procedure, our operating procedure, we would preserve any valuables, jewels, money, things like that, and preserve them, taking them to the property room and put them on a property receipt form." (Emphasis supplied.)

[6] The state relies on an inference that authority to tow necessarily amounts to authority to inventory. Even if that were so, the ordinance nevertheless could not validate an inventory of an unlawfully towed vehicle.

"The requirement that inventory searches [sic] be conducted according to such criteria or routine strikes a balance between the government's legitimate interests in such searches [sic] and the owner's legitimate expectation of privacy in the contents of the seized vehicle. * * *

"Standardized criteria or an established routine governing inventory searches [sic] must limit an officer's discretion in two ways. First, it must limit the officer's discretion regarding whether to search [sic] a seized vehicle. Second, the pre-existing criteria or routine must limit an officer's discretion regarding the scope of an inventory search [sic], particularly with respect to the treatment of closed containers." (Footnotes and citations omitted.)

The trial court correctly concluded that the Tigard police department policy adequately eliminates individual discretion about *whether* to inventory a vehicle, because it specifies that *every* towed vehicle must be inventoried. The trial court also correctly concluded that the policy adequately specifies the procedure that officers have to follow in removing property from a vehicle, leaving only minimal discretion to decide which articles are "of great value."

However, two questions remain: (1) Does the policy adequately curb individual discretion as to the *scope* of an inventory? (2) If it does, did the officer in this case act within that permissible scope? *See State v. Atkinson, supra,* 298 Or at 10-11. We answer the first question in the negative and, therefore, do not reach the second.

In *Atkinson,* the court held that, in the absence of stated restrictions on the exercise of discretion, an inventory is invalid, even though the officer merely

"went through the car's interior, including looking under the seats and into the unlocked glove compartment, but not the locked trunk, and prepared a detailed list of items in the vehicle." 298 Or at 3.

The Tigard inventory policy provides only that an officer complete a report and that property of "great value" be noted on the standard property receipt form.[7]

---

[7] Apparently the officer did not use a "Property Receipt Form" in this case. He testified that officers "*generally* list any items on a property *evidence* receipt that are taken as a result of the vehicle inventory." (Emphasis supplied.)

The dissent states:

> "Common sense dictates that, in order to inventory an impounded vehicle and make an accounting of valuable property, an officer *must* look throughout the vehicle. * * * The general nature of this inventory procedure *requires* an inventory of *every* place designed or objectively likely to contain valuables." 110 Or App at 575. (Emphasis in original.)

What that fails to recognize is that the "general nature" of the procedure is precisely what makes it defective. To approve a policy *because* it is so general that an officer must look everywhere he can think of flies in the face of the requirement that the inventory be "conducted according to standardized criteria," *Colorado v. Bertine, supra,* 479 US at 374 n 6, or "established routine." *Florida v. Wells, supra.* Under the dissent's view, the court would have to examine the location in which each piece of evidence was found and ask: Did the officer have a reasonable belief that something might be found there? That is the kind of detailed probable cause inquiry that *Atkinson* seeks to avoid. The only question the trial court should have to ask is: Would the evidence have been discovered by any person following the established policy or procedures?

The trial court in this case applied an "articulated reason" test to the officer's having chosen to examine the bulge in the driver's seat. It denied the motion to suppress, because choosing to remove the object from inside the seat "made sense" to the officer on the basis of *his personal* experience. That is precisely the kind of individual discretion that a policy for inventories has to preclude. The seized items should have been suppressed.

In the light of our disposition of defendant's first assignment of error, we need not reach his second.

Reversed and remanded for a new trial.

**RIGGS, J.,** dissenting.

I disagree with the majority's conclusion that the Tigard Police Department's inventory rules are inadequate under *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984). The majority seems to believe that a policy impermissibly allows the exercise of discretion, unless it enumerates specific places

in the vehicle to check when taking inventory of an impounded vehicle.[1]

An inventory policy need not provide great detail to remove discretion effectively. The Tigard Police Department's policy *requires* an inventory and completion of an inventory report, including a property receipt form for valuable property, on *all* towed vehicles. Common sense dictates that, in order to inventory an impounded vehicle and make an accounting of valuable property, an officer *must* look throughout the vehicle. It would be impossible for inventory guidelines to list each and every location in each and every model of sedan, pickup, coupe, convertible, stationwagon, van or truck where valuables are likely to be kept. The general nature of this inventory procedure *requires* an inventory of *every* place designed or objectively likely to contain valuables. *See, e.g., State v. Mundt/Fincher,* 98 Or App 407, 413, 780 P2d 234, *rev den* 308 Or 660 (1989).

I also disagree with the majority's analysis as to the scope of the inventory. Although the majority correctly concludes that the policy eliminates discretion about whether to inventory a vehicle, it poses the next question in the analysis as "Does the policy adequately curb individual discretion as to the *scope* of an inventory?" 110 Or App at 573. (Emphasis in original.) Discretion in an inventory and permissible scope of an inventory are separate questions, and the majority incorrectly lumps them together. Therefore, it applies the wrong analysis in deciding whether the inventory was valid.

The majority's error appears to arise from its reading of *Atkinson's* three-part test. *Atkinson* should be read to require (1) that the vehicle be lawfully impounded, (2) that a properly authorized policy eliminate discretion in taking an inventory and (3) that the scope of the inventory be constitutionally permissible. *Atkinson's* own analysis supports that

---

[1] The majority characterizes the holding in *Atkinson* as "in the absence of *stated restrictions* on the exercise of discretion, an inventory is invalid," even under the facts of that case. 110 Or App at 573. (Emphasis supplied.) *Atkinson* does not require *stated restrictions.* It requires that the inventory "be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion * * *." 298 Or at 10. The court could not reach a conclusion whether the inventory was valid, in part because it was unclear whether the inventory in that case was conducted pursuant to such a program. 298 Or at 11. It remanded the case for further proceedings. 298 Or at 12.

reading of the test,[2] as does our analysis applying the *Atkinson* test in *State v. Mundt/Fincher, supra.*[3]

Under *Atkinson*, "[t]he scope of an inventory must be limited to that — an inventory. Objects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory." 298 Or at 10. (Footnote omitted.) The coin purse found during the inventory here was partially open, revealing the methamphetamine without further scrutiny. The officer did not exceed the permissible scope of an inventory.

I would hold that the inventory policy meets the *Atkinson* test and that the inventory was valid. Therefore, I dissent.

---

[2] In *Atkinson*, the court first addressed whether the vehicle was lawfully impounded and noted that the parties and the trial court assumed that it was. 298 Or at 11. Second, it concluded that it was unclear "whether this inventory was conducted pursuant to a properly authorized program designed and systematically administered to achieve the stated purpose." 298 Or at 11. *Finally, and separately*, it concluded that it was unclear whether the inventory was within the scope permissible under Article I, section 9, of the Oregon Constitution. 298 Or at 11. For the last two reasons, the Court remanded the case for further proceedings.

[3] In *Mundt/Fincher*, we applied the second and third parts of the *Atkinson* test to the inventory of an arrestee's personal property during the booking procedure. We considered whether the booking officer had discretion to inventory the contents of a wallet or a purse. *After* concluding that she had no discretion, we turned to the question of the scope of a valid inventory. 98 Or App at 415.