Submitted on record and briefs September 9, affirmed October 26, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# LARRY BRUCE ANDERSON,
*Appellant.*

## (DA1009033; CA A82463)

883 P2d 910

Zack M. Lorts filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, Jonathan H. Fussner, Assistant Attorney General, and Coyreen R. Weidner, Certified Law Student, filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals his conviction for discharging a loaded firearm, specifically a "potato gun" or "potato cannon," within the city limits of Portland.[1] Portland City Code (PCC) 14.32.010(d).[2] He contends that a potato gun is not a firearm and that the trial court therefore erred in denying his motion for judgment of acquittal. He also argues that the court erred by refusing to admit into evidence a concealed weapon permit that was issued to defendant in the state of Washington. Defendant contends that, because the Portland ordinance forbidding discharge of a loaded firearm within the city contains an exception for persons "having a valid permit issued * * * by lawful authority to carry or use firearms," the evidence of his valid Washington permit was relevant and would have provided a second basis for an acquittal. We affirm.

■　　This court reviews the denial of a motion for judgment of acquittal to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Harris*, 288 Or 703, 721, 609 P2d 798 (1980) (quoting *Jackson v. Virginia*, 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979) (emphasis in original)).

On September 11, 1993, Dana Miller was in his home when he heard several "thumps" that sounded like a car backfiring. Miller went to his window and saw defendant and another man across the street, in the front yard of a neighboring house that was located approximately 30-35 yards from

---

[1] Defendant was originally charged by citation with the misdemeanor of discharging a loaded weapon. However, the district attorney elected to treat the crime as a violation, rather than a misdemeanor. The standard of proof in a trial for a violation is to establish guilt by a preponderance of the evidence. ORS 136.750(2).

[2] PCC 14.32.010(d) provides that

"[i]t is unlawful for any person to fire or discharge a firearm within the boundaries of the city."

The ordinance is similar to ORS 166.220(1)(b), which provides that a person commits the crime of unlawful use of a weapon if such person

"[i]ntentionally discharges a firearm * * * within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle without having legal authority for such discharge."

Miller's. Defendant was holding a piece of black plastic pipe that was approximately three feet long and three and one-half inches in diameter. Miller watched defendant place one end of the pipe on the porch and drop what Miller guessed to be a potato in the other end of the pipe. Although Miller could not see that the object was a potato, he observed defendant remove the object from a sack that Miller described as "a regular 10-pound bag of potatoes you'd buy from the store * * *." He also saw chunks of broken potato on the street in front of his house and in his yard. Miller did not see anyone fire the gun. He testified that, based on the sound the gun had made, he believed that it was powered by some type of explosive gas. After seeing defendant place the object into the pipe, Miller called the police. He heard a total of five to seven thumps before the police arrived.

Officer Hawkins responded to Miller's call within 15 minutes. As Hawkins drove down the street, he saw defendant sitting on the porch of the house with a "potato cannon between his legs pointing skyward." Hawkins observed defendant hand the potato gun to a woman, but did not see where the woman took the gun. Hawkins parked his car and approached defendant. Hawkins told defendant that it was illegal to discharge a potato gun within the city limits. Defendant replied "it's legal to shoot a spud gun. I wasn't doing nothing wrong." Hawkins saw a bag of potatoes lying at defendant's feet and a can labeled "Aqua Net"[3] sitting on the porch railing. He also saw a PVC pipe plug with an electric igniter switch in one end. Hawkins arrested defendant, then unsuccessfully attempted to locate the pipe that made up the barrel and chamber of the potato gun. Hawkins seized from defendant's yard a ramrod that apparently had been used to insert potatoes into the gun.

At the bench trial, Hawkins testified about his experience with potato guns, stating that he had seen them in training demonstrations, had seized a number of them in his police work, and had assembled such a gun and fired it himself. Hawkins explained that a potato gun consists of two sections of PVC pipe. One section of the pipe is four inches in

---

[3] Because Hawkins did not examine the can to determine its contents, the trial court admitted the evidence only for the limited purpose of describing what the officer saw and did not consider the testimony as evidence of a propellant.

diameter. That section, which serves as the combustion chamber, is attached to a one and one-half-inch section of pipe that serves as a barrel. An igniter switch is attached to a screw-in plug and placed on the end of the combustion chamber. Hawkins explained that,

> "[t]o fire the cannon, you jam a piece of potato down the [barrel portion of the pipe] using a ramrod. Then, you open the back of the potato gun, you spray in about a two second squirt of flammable aerosol such as hair spray or carburetor fluid, screw the end back on, and then ignite it. * * * When the gas is ignited, it explodes driving the projectile out of the barrel for upwards of two or three hundred yards."

Hawkins stated that the PVC pipe plug that he had seized from defendant would fit onto a typical potato gun. Hawkins also testified that he had tested the igniter switch seized from defendant's porch and found that it was operational.

■ Defendant moved for a judgment of acquittal on the ground that there was insufficient evidence that the potato gun was a "firearm" within the meaning of the city ordinance. He also argued that no one actually saw him fire the potato gun. The trial court denied the motion. Defendant assigns error to that ruling.

PCC 14.32.010 provides, in part:

> "(a) As used in this Chapter, 'firearm' means a pistol, revolver, gun, rifle or other ordnance, including a miniature weapon, which projects a missile or shot by force of gunpowder or any other explosive, by spring or by compressed air."[4]

There was evidence at trial that the potato gun fit that definition of a firearm. Hawkins testified that a potato gun fires by means of igniting explosive aerosol fumes and that, upon firing, a potato gun can project potatoes a distance of several hundred yards. Here, Miller saw defendant load the gun, heard the gun fire and saw pieces of potato in front of his home, approximately 100 feet from where defendant was seen holding the gun. Also, Hawkins saw defendant sitting on the

---

[4] This ordinance is similar to, although somewhat broader than, the statutory definition of a firearm. ORS 166.210(2) defines a firearm as

"a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon."

porch holding the gun. Those facts support the court's finding that defendant discharged the gun. Defendant's motion for judgment of acquittal was properly denied.

 We turn to defendant's argument that the trial court erred by refusing to admit into evidence defendant's concealed weapon permit. Defendant attempted to present the Washington-issued permit, but the court refused to consider it, stating that it was "[no] defense to this charge." Defendant contends that the language of the ordinance, which excuses a person from criminal liability for discharging a weapon within the city limits when the person possesses "a valid permit" to carry or use firearms, PCC 14.32.101(e), should be interpreted as encompassing persons with valid permits issued by other states. Defendant argues that, because he had a valid Washington concealed weapon permit, he should not have been convicted of the violation.

That argument overlooks the fact that under Washington law, defendant's permit was not valid in Oregon. Washington law provides that concealed weapon licenses issued in that state authorize a person to carry a concealed weapon only within the state of Washington.[5] Thus, defendant's permit, by its own terms, was valid only in Washington. Accordingly, it was not a "valid permit" within the meaning of PCC 14.32.010(e) and had no relevance at defendant's trial. The trial court did not err by refusing to admit the permit into evidence.

Affirmed.

---

[5] Wash Rev Code § 9.41.070(1) (1993) provides, in part:

"The judge of a court of record, the chief of police of a municipality, or the sheriff of a county, shall within thirty days after the filing of an application of any person issue a license to such person to carry a pistol concealed on his or her person *within this state* for four years from the date of issue * * *." (Emphasis supplied.)

Although not discussed below, we may properly take judicial notice of this law for the first time on appeal. *State v. Willhite*, 110 Or App 567, 571 n 4, 824 P2d 419 (1992). OEC 201(f) provides that "[j]udicial notice may be taken at any stage of the proceeding." OEC 202(1) provides that law judicially noticeable includes:

"[t]he decisional, constitutional and public statutory law of Oregon, the United States and any state, territory or other jurisdiction of the United States."