Argued and submitted April 28, reversed and remanded August 16, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN WAYNE ELDRIDGE,
*Appellant.*

## 03CR1500; A123728

142 P3d 82

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Seann C. Colgan, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

ARMSTRONG, J.

---

* Rosenblum, J., *vice* Richardson, S. J.

## ARMSTRONG, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence seized in a police inventory of the car that he was driving when he was stopped. We reverse.

The facts of this case are undisputed. North Bend police officers stopped defendant for a traffic violation. The officers issued a warning for the violation and also cited defendant for driving while suspended and for failure to produce proof of insurance. Because of defendant's driving status, the officers impounded his car, and defendant left the scene on foot. The officers conducted a pre-tow inventory of the car, during which they looked in the center console and found a "bindle which * * * ha[d] residue which was consistent with methamphetamine."[1] The officers then located defendant a few blocks away and arrested him. The residue tested positive for methamphetamine.

Defendant moved to suppress the evidence of the controlled substance on the ground that the inventory of his car violated his state and federal constitutional rights. At the suppression hearing, a copy of the North Bend Police Department Vehicle Towing Policy was entered into evidence. The policy provides, in part:

"I. PURPOSE The purpose of this policy is to provide all sworn law enforcement employees with the required procedures for towing all abandoned and/or seized vehicles.

"II. POLICY It shall be the policy of this department that all vehicles subjected to being towed per the request of any law enforcement officer representing this agency having established the need to do so, and having the legal

---

[1] The police officers refer to a "bindle" in the record without further description. For the benefit of the reader, we note the dictionary meanings of the term: "1. *slang* a : a bundle usu. containing clothing and cooking utensils b : BLANKET ROLL 1, BEDROLL 2. *slang* : a small package, envelope, or paper containing a narcotic (as morphine, heroin, or cocaine); also : a usu. small quantity of a narcotic : a narcotic dose." *Webster's Third New Int'l Dictionary* 217 (unabridged ed 2002). We gather that the second definition applies, but do not consider the nature of the item any further because defendant does not challenge the officers' examination of the "bindle."

authority to do so, shall be *completely searched and inventoried* prior to being towed, if possible, or as soon a[s] practicable after having been secured following the tow.

"An INCIDENT REPORT shall be generated by the officer effecting the tow, and such report shall indicate the reason for the tow, the condition of the vehicle at the time of the tow, and a complete inventory of all vehicle contents as requested on the applicable INCIDENT REPORT form. Any items of notable value shall be secured in the department property room and held in safe-keeping pending proper disposition of same. All evidentiary items seized from the vehicle pursuant to legal search by police officers shall be secured in the agency property room pending proper disposition of same."

(Emphasis in original.) The policy continues with nine pages of procedures and attachments that concern conditions under which the police may tow vehicles and the notice requirements to owners of towed vehicles.

 The officers testified that they use a "tow sheet" to document an inventory. Although the officers testified that the tow sheet provides "guidelines" that standardize how they conduct the inventory, in describing its content they referred only to instructions for an inspection of the exterior and the engine compartment to note certain details of a vehicle's condition. From the testimony of one officer, it appears that officers write the vehicle contents from an inventory in free form on the back of the tow sheet:

"So that's why we use the back, usually in order to document what's in the car. * * * You just look through the car. Usually we do front to back, and just go through it thoroughly. * * * They don't have a set, you know, like verbatim things you need to put—like things of that nature. We're looking for things of value."[2]

The same officer also testified with respect to officer discretion and department oversight of the process:

"Defense: So, you basically have some discretion on what you write down on this?

---

[2] The officers testified to the content of a tow sheet form and showed the trial court the completed tow sheet for the inventory of defendant's car, but the tow sheet was not entered into evidence and so is not in the record before us.

"Officer: Right.

"Defense: And you're the one who decides what's valuable and what's not valuable?

"Officer: Within what a reasonable person would consider valuable. If it's like a camera, oh yeah, we're going to write that down. So, that's value. Absolutely.

"Defense: Okay. Is there anyone that oversees these inventory searches to determine that people are doing them the same way?

"Officer: No. Just the officer. Oftentimes, with staffing, manpower issues, we're all out there doing the same job."

We review a denial of a defendant's motion to suppress evidence for legal error. *State v. Sopiwnik*, 176 Or App 127, 129, 30 P3d 430 (2001). The Supreme Court has established a three-part test to assess whether the inventory of an impounded vehicle violates Article I, section 9. *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). The constitutional performance of an inventory requires: (1) lawful impoundment of the vehicle; (2) an authorized administrative inventory program that the agency administers systematically to prevent discretion on the part of the law enforcement personnel who direct or conduct inventories; and (3) performance of the inventory according to the program's established policy and procedures. *Id.* at 8-10. The third element contains a "scope" constraint to the effect that "[o]bjects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory." *Id.* at 10. That limitation insures that the inventory is limited to accomplishing its permissible purposes: to protect the owner's property in police custody, to prevent claims against the police for lost items, and to protect the police from dangerous items. *Id.* at 7; *accord State v. Willhite*, 110 Or App 567, 572, 824 P2d 419 (1992) ("[T]he justifications offered for the policy have to be considered in determining the validity of the policy and the lawfulness of its execution.").[3] "What is needed in the vehicle inventory context, then, * * * is not probable cause

---

[3] "Reliance on this [third] reason must have a concrete basis in specific circumstances; it may not simply be assumed as a basis of a general precautionary practice." *Atkinson*, 298 Or at 8.

but rather a regularized set of procedures which adequately guard against arbitrariness." *Atkinson*, 298 Or at 10 n 5 (quoting Wayne R. LaFave, 2 *Search and Seizure* 576 (1978)).

■ Here, defendant argues that the North Bend Police Department has an inventory program that does not pass constitutional muster; he does not dispute whether the impoundment of his vehicle or the extent of examination of the bindle was lawful. We agree with defendant that North Bend's inventory program, according to the record that the state established here, violates Article I, section 9.

The facts of this case are indistinguishable from the circumstances that we considered in *Willhite*. There we said,

"[T]he general nature of the procedure is precisely what makes it defective. To approve a policy *because* it is so general that an officer must look everywhere he can think of flies in the face of the requirement that the inventory be conducted according to standardized criteria or established routine. * * * The only question the trial court should have to ask is: Would the evidence have been discovered by any person following the established policy or procedures?"

110 Or App at 574 (internal quotation marks and citations omitted). As in *Willhite*, the North Bend police rely on a source of authorization that focuses on impoundment and towing rather than on the administrative inventory program itself. An authorized towing program can conceivably incorporate a sufficient inventory policy and procedures. But that is not the case when, as here, the inventory instructions are limited to (1) every impounded vehicle "shall be *completely searched and inventoried*," and (2) "make a complete inventory of all vehicle contents."

■ The testimony and the documents as shown and described in this record reveal that the North Bend inventory program fails to incorporate any instructions on how to conduct an inventory, any oversight of the personnel directing and conducting inventories, or any definition of the places to look or what constitutes an item that should be examined and documented. The officers testified to an appropriate goal, namely, to record items of value, but no aspect of the program assures the public that North Bend's inventory practices are

consistently administered without discretion or arbitrariness. "[A]n inventory policy provides no general license to examine all the contents of * * * automobiles." *Willhite*, 110 Or App at 570 (internal quotations and citation omitted). As in *Willhite*, the North Bend inventory program lacks standardized criteria or procedures that properly prevent officer discretion and limit each inventory to a scope that is a constitutional administrative action rather than an unlawful warrantless search.

Reversed and remanded.