Argued and submitted January 7, affirmed October 2, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICKLAS MARTIN BARNETT,
aka Nicklas Adam Barnett,
*Defendant-Appellant.*

Coos County Circuit Court
16CR74403; A165293

449 P3d 914

Richard L. Barron, Senior Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

PER CURIAM

Affirmed.

James, J., concurring.

## PER CURIAM

Defendant appeals from his conviction of unlawful possession of methamphetamine, ORS 475.894, assigning error to the trial court's denial of his motion to suppress evidence resulting from the inventory of a small camera case. On appeal, defendant argues that the camera case was not a container "designed" to hold valuables, but was rather designed to hold a camera and that a camera does not constitute a "valuable" when read in the context of the policy, in particular the following section:

> "This policy provides guidance regarding searches of individuals in custody. Such searches are necessary to eliminate the introduction of contraband, intoxicants or weapons into the North Bend Police Department facility."

The state responds that our decision in *State v. Cleland*, 289 Or App 379, 382, 410 P3d 386 (2017), *rev den*, 362 Or 699 (2018), supports the trial court's conclusion that the inventory in this case was lawful. The state argues that "an item is a valuable depending on how the governing inventory policy describes the types of valuables that containers might be designed to carry" and points to another section of the policy that states:

> "Closed Container Searches. Closed containers will not be opened for inventory purposes except for the following, which shall be opened for inventory: wallets, purses, coin purses, fanny packs, personal organizers, briefcase or other closed containers designed for carrying money or small valuables, or closed containers which are designed for hazardous materials.

> "Other closed containers shall be opened and inventoried if the owner acknowledges they contain cash in excess of $10, valuables or a hazardous material."

The state argues that the policy used "the same kinds of examples of valuables—wallets, purses, briefcases—as the policy at issue in *Cleland*. And, as in *Cleland*, those examples suggest a case for carrying a small electronics device is a case for carrying valuables."

We agree and, accordingly, affirm.

Affirmed.

**JAMES, J.,** concurring.

Defendant challenges the search of a small camera case pursuant to a City of North Bend inventory policy. We affirm that inventory by per curiam opinion, relying on our recent decision in *State v. Cleland*, 289 Or App 379, 382, 410 P3d 386 (2017), *rev den*, 362 Or 699 (2018), where we held that a Salem inventory policy that authorized the search of containers designed to hold valuables encompassed containers designed to hold small electronic devices—in that case, a game system. I wrote separately in *Cleland* to discuss the history of Oregon's inventory jurisprudence and the logical contradictions and policy consequences our decisions in this area have created. In so doing, I likened our inventory decisions to impressionist paintings hung in a museum. But law, like art, moves forward. And with recent decisions, I believe we may have firmly entered the surrealist period.

Any discussion of inventory policies under Oregon law must begin with *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). In *Atkinson*, the Oregon Supreme Court held, explicitly and without qualification or equivocation, that to be valid under the Oregon Constitution, an "inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves *no exercise of discretion by the law enforcement person* directing or taking the inventory." 298 Or at 10 (emphasis added). The court then went on to state that

> "[o]bjects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory.
>
> "The degree to which an inventorying officer may scrutinize the items uncovered is limited. *See State v. Perry*, 298 Or 21, 688 P2d 827 (1984), decided this day. *See also State v. Keller*, [265 Or 622, 510 P2d 568 (1973),] where we held that police conducting an inventory of an automobile 'pursuant to administrative requirements' *** could not open a fishing tackle box which was secured with wire tied around it, but would be required to inventory only the container as 'one fishing tackle box.'"

*Id*. (footnote omitted).

*Atkinson* states that the scrutiny given to items is limited and, in explanation of that limitation, points to its decision in *Keller*, 265 Or at 626-27. There, the court held that the inventory of a tackle box was unlawful and, in explaining that result, examined two competing lines of reasoning from other jurisdictions. Representative of the first line of reasoning, the court called out *People v. Sullivan*, 29 NY2d 69, 272 NE2d 464, 323 NYS2d 945 (1971). There, a briefcase was found in an impounded car. The briefcase was opened pursuant to an inventory, and the weapon inside was held to be lawfully admitted in evidence.

The reasoning and result in *Sullivan* were rejected by *Keller*:

"We believe the better reasoning is expressed in the following cases. In *Mozetti v. Superior Court of Sacramento County*, 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84 (1971), the petitioner (mandamus to require suppression of evidence) was involved in a two-car collision and was taken to the hospital. Police arrived and her car was blocking the roadway. 'In accordance with standard (police) procedure' the officer was instructed to prepare an inventory of the contents of petitioner's automobile prior to having it towed away. In the course of his inventory, the officer saw an unlocked suitcase on the back seat, in addition to other items in plain view. 'Finding the suitcase unlocked he opened it, apparently to determine if it contained any articles of value.' Inside he found a plastic bag containing marijuana, which was the basis of the information charging petitioner with possession of marijuana. The facts are parallel to the case at bar except there was no lawful arrest. The court held:

"'We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report. *** What concerns us here is the reasonableness of the search *into* the closed suitcase.'

"'*** Thus we find unpersuasive the contention made by the People that the inventory of contents not within plain sight is reasonable because it is necessary to protect the property for the benefit of the vehicle owner.'"

*Keller*, 265 Or at 627 (emphasis in original).

To summarize, *Atkinson* held that there were limits to the degree of scrutiny that an officer may give to items while conducting an inventory and pointed to *Keller* as explaining those limits. *Keller*, in turn, rejected the reasoning of *Sullivan*, which permitted the opening of a briefcase, and instead adopted the reasoning of *Mozetti*, which limited police scrutiny to the outward container only—requiring that the inventory list "one suitcase" without opening it to list the contents individually.

One might reasonably ask how then, given that history, we arrived at a decision *upholding* the inventory of a briefcase—precisely the scenario *rejected* by *Keller* and *Atkinson*—in *State v. Johnson*, 153 Or App 535, 540, 958 P2d 887, *rev den*, 327 Or 554 (1998) ("[T]he briefcase and the coin purse in this case *** are typically used to store valuables in the same way as a purse or a wallet."). Certainly our decision in *State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234, *rev den*, 308 Or 660 (1989), a decision I have previously described as "judicial alchemy," opened the door. *Cleland*, 289 Or App at 388 (James, J., concurring).

*Mundt/Fincher* acknowledged that our decision in *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984)—a decision made in the immediate wake of *Atkinson*—had admitted that the Oregon Supreme Court had set a clear and uniform rule:

> "[P]roperty is to be listed by its outward appearance; no closed, opaque container may be opened to determine what, if anything, is inside it so that the contents may be inventoried in turn. This is a commendably clear and simple rule, easy to enforce in most circumstances, including those in the present case."

*Ridderbush*, 71 Or App at 426. But, *Mundt/Fincher* carved out an exception to that uniform rule, holding:

> "*Ridderbush* does not control the inventory of a wallet or a purse. Neither a wallet nor a purse is a 'closed, opaque container.' The black box in *Ridderbush* could have contained anything small enough to fit in it. However, a wallet typically has openings for inserting money, credit cards and other valuables; even when folded shut, it is not 'closed' in the way that the box in *Ridderbush* was. A purse usually

has compartments for storing money and other valuables and frequently holds a wallet. Because wallets or purses are primarily intended to be used to store valuables, it may be important to discover what is in them[.] *** Although other containers may also hold valuable property, wallets and purses are uniquely designed for that purpose."

98 Or App at 412. And with that pronouncement, *Mundt/Fincher* unmoored this court from *Atkinson* and *Keller*—and we have drifted ever since.

After *Mundt/Fincher*, our decisions came to focus on whether the object inventoried was "designed" to hold valuables, or "likely" would hold valuables, and turned on us analogizing the object in question to a wallet or a purse. *See, e.g.*, *Cleland*, 289 Or App at 382 (upholding the inventory of a "container for holding a small external computer hard drive or a small video game console"); *State v. Komas*, 170 Or App 468, 475, 13 P3d 157 (2000) (upholding inventory of a shoulder bag as it is "akin to either a purse or a fanny pack"); *State v. Bean*, 150 Or App 223, 229, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998) (holding that fanny packs were containers "intended primarily to store valuables" in a general sense and, therefore, excepted from the *Atkinson* prohibition). Despite the fact that neither *Atkinson* nor *Keller* rely on an item's design or likely use as a decisional basis, that has become our focus today. With each new case, we address a new iteration of container, hold it up to the long line of other containers stretching back to the wallet or purse, and conclude that it was intended to, or likely would, contain something valuable, and is, therefore, permissibly opened in an inventory. And in so doing, we have used the apple of reasoned incrementalism to hide our bowlered face from the uncomfortable clarity of *Atkinson* and *Keller*.

The resulting drift away from Oregon Supreme Court precedent is exemplified by this case, and our recent decision in *State v. Salkoski*, 299 Or App 180, 448 P3d 718 (2019). In this case, the North Bend inventory policy at issue provides:

"Closed containers will not be opened for inventory purposes except for the following, which shall be opened for inventory: wallets, purses, coin purses, fanny packs, personal

organizers, briefcases or other closed containers designed for carrying money or small valuables, or closed containers which are designed for hazardous materials.

"Other closed containers shall be opened and inventoried if the owner acknowledges they contain cash in excess of $10, valuables or a hazardous material."

In oral argument before us, the state acknowledged that "there might be an implicit threshold in this policy that valuables have to be worth $10.00 or more" regardless of whether the container is being opened under "design" in the first clause, or under the policy's second clause of "use." In other words, the policy, as written, may imply that wallets, purses, briefcases, and other closed containers designed for carrying valuables *in excess of $10.00* are subject to being opened. In *Cleland*, I noted the implicit injection of officer discretion into a determination of value. If the policy in this case operates as the state acknowledges, it only exacerbates that problem. Here, like a game show contestant, the officer is asked to approximate a value, without going under a target. If one fanny pack looks like it would only have $9.99, it is secured, while another that somehow is determined to likely have more than $10.00 is opened. There is simply no credible argument that such a determination by an officer in the field is anything other than an exercise of discretion.[1]

Our recent decision in *Salkoski* exemplifies another problem with the design/likely use rationale. There, we once again expanded the universe of permissible containers to include the generic, yet ubiquitous, backpack. We justified that conclusion by noting that "[t]his court has plainly and repeatedly held that an inventory policy may lawfully authorize police officers to open closed containers that are *either*

---

[1] The challenges presented by using a valuation assessment as a predicate for authorization for an inventory may be soon made more difficult by our recent decision in *State v. Jones*, where we held, in the context of criminal mischief, that

"[v]alue is not always merely economic value. Property may be damaged in the sense of being physically harmed or losing completeness, efficiency, or function. It may be damaged even if such loss of efficiency or function has no appreciable affect on the economic value. Even objects with no economic value at all can be damaged if the harm affects some other value—like sentimental value."

298 Or App 264, 268, 445 P3d 358 (2019).

designed to hold valuables *or* are likely to contain them." 299 Or App at 183-84 (emphases in original). We then concluded, "a 'normal, standard backpack' is akin to a fanny pack, as well as a wallet, purse, briefcase, and shoulder bag. All, *by their nature*, typically are used to store valuables." *Id.* at 184 (emphasis added).

How we derived at our pronouncement on the "nature" of a backpack is left unexplained. It unquestionably was not based on *evidence*—there was no evidence presented in *Salkoski* on the nature of a backpack, its common uses, or statistical data on how often it is used by the populace to contain a "valuable." But, to be fair, there was no evidence on an item's use or nature presented in *any* of our inventory cases where we expanded the category of permissible objects. Rather, our approach in all these cases seems ontological—where we pronounce, as philosophical truism, that an object simply *is* of a particular essence. But it is hardly self-evident that a backpack is "designed" to hold valuables. Some are clearly a nonfunctionary fashion accessory. And, while a backpack certainly may hold a valuable, and sometimes certainly does, sometimes it simply holds an old sweatshirt, a bottle of water, or a well-read book. We have no basis—either in logic or evidence—to arrive at any conclusions on the frequency of that use so as to label it "likely."

Our decisional history since *Mundt/Fincher* shows no limiting principle. If the backpack in *Salkoski* can be opened pursuant to an inventory, what cannot? Through the lens of analogy, the gym duffel will look akin to the backpack. The shopping bag will fit neatly alongside the shoulder bag. The rolling backpack will be next, and from there, it is a short hop to the airline carry-on. At that point, the suitcase becomes an extension that logic demands. If our jurisprudence in this area is not corrected—either by us, or the Supreme Court—the only object that will remain free from scrutiny will be the original tacklebox of *Atkinson.* Yet, the Oregon Constitution provides that everyone—not just the angler—is protected from the warrantless administrative rummaging through one's personal effects by the government.

However, here, like *Cleland*, I join the majority. Defendant's attempts to distinguish the facts of this case from precedent are unpersuasive. To reach a different result would require more than factual distinction, it would require that this court disavow many of its prior decisions in this area. "[T]he principle of *stare decisis* means that the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005). Neither party has asked us to do so, and it would be improper for this court to engage in that task *sua sponte*.

Accordingly, I concur.