On appellant's petition for reconsideration filed February 10, petition for reconsideration allowed; decision (110 Or App 372, 822 P2d 762 (1991)) withdrawn; judgment vacated; remanded for further proceedings July 8, reconsideration denied December 2, petition for review denied December 22, 1992 (315 Or 271)

## STATE OF OREGON,
*Respondent,*

*v.*

## GALEN ELTON GAUNCE,
*Appellant.*

(C8903-31631; CA A64170)

834 P2d 512

Sally L. Avera, Public Defender, and Peter Gartlan, Deputy Public Defender, Salem, for the petition.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

### De MUNIZ, J.

Defendant petitions for review of our decision that affirmed, without opinion, his conviction for possession of a controlled substance. 110 Or App 372, 822 P2d 762. We treat the petition as one for reconsideration, ORAP 9.15(1), and allow it. He contends that the trial court erred when it concluded that the police lawfully discovered contraband in his car during an inventory that followed his arrest. We vacate the judgment and remand for further proceedings.

■　　　In reviewing the trial court's ruling, we are bound by its findings of historical fact that are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Accordingly, we take the facts from the court's oral ruling on defendant's motion to suppress and the evidence that supports that ruling.

Officer Payne responded to a report that there was a prowler in a southeast Portland neighborhood. He saw defendant's car, which "was pointed out to [him] as not being a neighborhood car." Payne "waited for [defendant] to commit a traffic violation" that would justify stopping him. He stopped defendant after observing that the rear license plate of his car was not lighted. He ran a check on defendant's driver's license and found that there was a warrant for his arrest for failing to appear at an arraignment. Payne arrested him and decided to have his car towed. At the hearing on defendant's motion to suppress, Payne explained the factors that he considered in deciding to have the car towed. It was blocking a traffic lane,[1] and

> "[defendant] said he owned the car for like two weeks. There were four brand new tires on the car, which he said that he paid $100 for, which * * * led me to believe that the tires were more than likely stolen."

Payne also suspected that the car might be stolen and that it might contain drugs. He conducted what he described as a

---

[1] Portland City Code § 16.04.020(a) provides, in part:

"Any vehicle found on any street * * * may be towed, upon order of a City officer or employee, and taken to a storage area * * * when:

"* * * * *

"(2) The vehicle is parked unlawfully or in a manner that may be hazardous to traffic[.]"

"standard inventory search" of defendant's car. During the "inventory," he lifted a pair of gloves. Underneath them, he found a baggie containing a white substance that he believed to be methamphetamine. He seized the baggie and had its contents tested. The substance turned out to be cocaine.

The inventory policy of the Portland Bureau of Police is described in a General Order. The record does not include a copy of that order.[2] Payne testified that the policy requires an officer to inventory every vehicle that is towed. He added that, "in most cases that it's officer discretion as to whether or not a vehicle [is] towed" in the first place.

■ An automobile inventory is not an unreasonable search under Article I, section 9, if three requirements are satisfied. First, the car must have been lawfully impounded. *State v. Atkinson*, 298 Or 1, 8, 688 P2d 832 (1984).[3] Payne testified that his department's "normal practice" is to inventory a car before it is towed, because, "[I]t's being towed to a tow lot." We presume that Payne was impounding defendant's car when he decided to have it towed. We note that a

---

[2] The court relied on the testimony of Payne about the content of the order. The state appended a copy of the order to its brief. It provides:

"Every vehicle towed (except private request tows) will be inventoried. Officers will complete the inventory section on the Incident or Custody Report. The [illegible] include the entire passenger compartment, uncovered hatchback, unlocked glove box(es) and unlocked trunk. The inventories of locked glove box(es), trunks and covered/locked hatchbacks will be conducted if keys are available, or unlocking mechanisms are provided within the vehicle so that forced entry is not required. The inventory is *not* a search for evidence. Items should be scrutinized to the extent necessary to complete the inventory. While officers may seize evidence or contraband located during the inventory, officers will *not* open closed containers nor inventory the contents thereof.

"If, during the inventory, an officer locates a closed container which the officer has probable cause to believe contains evidence or contraband, the officer may seize the container, but should not open or search the container without first obtaining a search warrant, or the owner's consent. *Example*: A small fishing tackle box should be inventoried as just that. The box should not be opened, nor its contents inventoried. A Property Receipt must be completed accounting for all items seized. If the vehicle's owner or custodian is not available, a copy of the Property Receipt will be placed in a conspicuous place in the vehicle or given to the tow operator." (Emphasis in original.)

None of the briefs provided by the state contains an entirely legible copy of the order. No party contends that the illegible segments are critical to the disposition of this case.

[3] If the police do not impound a car, they may not conduct an inventory. In that event, any intrusion into the car, other than for the purpose of manipulating it off the road, constitutes a search.

car is impounded when the police take physical control of it with the intention of removing it to an impoundment facility. Police must have authority to conduct an inventory before the tow operator removes the car from the scene, in order to avert misappropriation by tow operators or false claims of misappropriation. Defendant's car was impounded when Payne conducted the inventory. The critical issue in this case is whether that impoundment was lawful.[4]

■ In denying defendant's motion to suppress, the court said:

"[The officer's] testimony that he's required to inventory once the decision is made to tow and that he has no discretion in making that decision is sufficient for a finding that the subsequent plain view seizure of the contraband is valid."[5]

The court apparently concluded that a policy requiring officers to inventory every car that is towed sufficiently removes officer discretion. We disagree.

■■ In *State v. Willhite*, 110 Or App 567, 824 P2d 419 (1992), we observed that an inventory policy must "adequately eliminat[e] individual discretion about *whether* to inventory a vehicle." 110 Or App at 573. (Emphasis in original.) The reason for that limitation is that an inventory is not a search for evidence of a crime. *State v. Mundt/Fincher*, 98 Or App 407, 416, 780 P2d 234, *rev den* 308 Or 660 (1989) (Buttler, P. J., concurring in part; dissenting in part); *see also State v. Atkinson, supra*, 298 Or at 6 (quoting *South Dakota v. Opperman*, 428 US 364, 383, 96 S Ct 3092, 49 L Ed 2d 1000 (1976)). The fact that Payne may have been looking for

---

[4] *State v. Atkinson, supra*, also requires that the inventory

"be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." 298 Or at 10.

In addition, the inventory may not "deviat[e] from the established policy or procedures." 298 Or at 10.

[5] There is no evidence that Payne could see the baggie before he lifted the gloves, nor is there any evidence that he could tell that anything was located underneath them without moving them. The court's conclusion that the baggie was in plain view is wrong. Nonetheless, lifting the glove did not exceed the permissible scope of an inventory conducted pursuant to the Bureau's policy, because the policy requires the officer to inventory the contents of "the entire passenger compartment."

evidence of a crime when he conducted the inventory would not, by itself, negate its lawfulness, if "the inventory would [have been] conducted in any event." *State v. Atkinson, supra*, 298 Or at 11 n 7.

The state contends that the trial court

"implicitly found * * * that the car would have been towed [independent of] any suspicions Officer Payne may have had about the car's or the tire's ownership."

That contention mischaracterizes the court's finding that

"[Payne] had the discretion to tow the vehicle and * * * he did not abuse his discretion in view of the circumstances that he found himself and the Defendant in, in particular, and *most importantly*, the automobile was blocking traffic and certainly would have created a hazard * * *." (Emphasis supplied.)

The court expressly found that *the main reason* Payne decided to have the car towed was that it was creating a potential traffic hazard. That finding indisputably reveals an implicit finding that Payne also considered his suspicions about criminal activity when he made his decision to impound.

 An officer's decision to impound a vehicle may involve the exercise of discretion. For example, Portland City Code § 16.04.020(b)(7) provides that a vehicle may be towed and impounded if

"[t]he vehicle was in possession of a person taken into custody by a law enforcement officer and no other reasonable disposition of the vehicle was available[.]"

Although an officer may suspect criminal activity when he decides to have a car impounded, his suspicions can play no part in the discretion that he exercises when deciding whether to impound a car. The reason for that proscription is that an inventory is necessarily "noninvestigatory." *See Nelson v. Lane County*, 304 Or 97, 102, 743 P2d 692 (1987). If suspicion of criminal activity affects the decision to impound a car, and an inventory follows, then the decision to impound the car effectively "single[s out the car] for special searching attention." *State v. Atkinson, supra*, 298 Or at 10 n 5 (quoting *United States v. Hellman*, 556 F2d 442, 444 (9th Cir 1977)); *State v. Ridderbush*, 71 Or App 418, 425, 692 P2d 667 (1984).

The "inventory" would amount to a search for "predictable 'things to be seized.'" *State v. Atkinson, supra,* 298 Or at 8 (quoting Or Const Art I, § 9). The lesson of *Atkinson* is that police may not embark on a criminal investigation by conducting an "inventory" as a substitute for a lawful search.

The dispositive factual issue in this case is whether Payne would have had defendant's car impounded, regardless of his suspicions. If his suspicions influenced his decision, then his decision initiated an investigative search for crime evidence. If that is the case, then defendant's car was not lawfully impounded. The trial court did not make a finding on this critical issue, and we lack the authority to make one. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968); *State v. Brown,* 110 Or App 604, 611, 825 P2d 282 (1992).[6]

Accordingly, we withdraw our decision, vacate defendant's conviction and remand with instructions to make a finding on the existing record. *See State v. Morrison/Bartee,* 108 Or App 766, 771, 816 P2d 1217 (1991). If the court finds that Payne's suspicions about criminal activity had no effect on his decision to impound defendant's car, then it shall reenter the judgment of conviction. If the court finds that Payne's suspicions did affect his decision, then the court shall allow defendant's motion to suppress and shall order a new trial.

Petition for reconsideration allowed; decision withdrawn; judgment vacated; remanded for proceedings not inconsistent with this opinion.

---

[6] The state's argument that the search of defendant's car was a proper search incident to arrest is without merit. *See State v. Baker,* 100 Or App 31, 33, 784 P2d 446 (1989).