Argued and submitted March 31, affirmed September 15, reconsideration denied December 8, 1993, petition for review denied February 1, 1994 (318 Or 351)

# STATE OF OREGON,
*Respondent,*

*v.*

# MARK E. COREY,
*Appellant.*

## (C91-07-33238; CA A71674)

859 P2d 560

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Edmonds and De Muniz, Judges.

EDMONDS, J.

De Muniz, J., dissenting.

**EDMONDS, J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error the denial of his motion to suppress evidence seized from the truck that he was driving. We affirm.

The trial court found that defendant was slumped over in a parked truck when the officer approached him. When the officer learned defendant's identity, she arrested him on an outstanding warrant for a parole violation. The truck was legally parked on a public street. A records check showed that the truck was registered to a name different than defendant's. Defendant told the officer that the truck belonged to his mother and that he used it in construction work. The officer could see tools in plain view in the back of the truck, which could not be secured if the truck was left on the street. Defendant said that he would like his mother to pick up the truck rather than to have it towed. Initially, the officer thought she might leave the vehicle parked where it was. However, she was concerned about the items in the back of the truck, which she believed were of value. Because there was no way to secure the items in the back of the truck, she decided to have the truck towed. She then began to inventory the truck pursuant to department procedure. During the course of the inventory, she opened the door to see if there was a stereo. When she did, she saw in plain view, some balloons which, based on her experience, she believed contained tar heroin. She seized the balloons, which are the subject of defendant's motion to suppress.

At the hearing on the motion to suppress, defendant argued that the opening of the cab door to see if there were valuables in the cab was an unlawful search. He asserts that, because he had requested that his mother be allowed to pick up the truck, the officer was required under the applicable City of Portland ordinance not to have the vehicle towed.[1]

---

[1] PCC § 16.040.020 provides, in part:

"(a) Authority to tow. Any vehicle found on any street * * * may be towed, upon the order of a City officer or employee, and taken to a storage area designated by the City, and held at the expense of the owner or person entitled to possession thereof, when:

"* * * * *

Therefore, he reasons that the officer was without authority to open the door. In response to that argument, the trial court concluded:

> "There was [*sic*] miscellaneous items of tools that she could see that were in plain view and [defendant] said[,] 'let my mother come and get the rig.' She doesn't have to do that. The rig has been sitting there, by her testimony, prior to her shift, her coming on shift. She comes on shift. To leave it there any further, not knowing anything about the mother's whereabouts or how long it's going to take the mother to get there, the inventory remains vulnerable, if you will. And so for her to secure it and expedite the matter — she's not required to sit there and wait for the mother or to call the mother. So they acted reasonable [*sic*] in that circumstance. And when — she didn't have to disturb anything after he exited the vehicle and was secured, the narcotic was in plain view, as far as I'm concerned. And I find that the search was reasonable under the circumstances."

■ ■ The state argues that there were no reasonable alternatives to impoundment and that the requirements of the ordinance were met. Alternatively, it argues that the ordinance was irrelevant, because the tar heroin was in plain view on the seat of the vehicle. In evaluating whether the search of the cab was justified, we are bound by the trial court's findings of historical fact if evidence supports them. If the trial court did not make findings on all pertinent facts, and there is evidence from which those facts could be decided more than one way, we presume that the trial court found them in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). When our task concerning the issues of fact is completed, then our role is to determine whether the trial court correctly applied the law. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

---

"(7) The vehicle is in possession of a person taken into custody by a law enforcement agency;

"* * * * *

"(b) Towing without prior notice. Provided further, that vehicles may be towed, pursuant to Subsection (a) above, without prior notice, only under one or more of the following circumstances;

"* * * * *

"(7) The vehicle was in possession of a person taken into custody by a law enforcement officer and no other reasonable disposition of the vehicle was available[.]"

■ ■ The officer's act of opening the truck door and exposing the contents to view was a "search" under Article I, section 9, of the Oregon Constitution. *State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992). However, if certain requirements are met, an inventory of the contents of an automobile is not an unreasonable search under Article I, section 9. One of those requirements is that the car must have been lawfully impounded. *State v. Atkinson*, 298 Or 1, 8, 688 P2d 832 (1984). Implicit in the trial court's findings is the fact that the officer had decided to impound defendant's truck by having it towed, and that her opening of the truck door was an inventory pursuant to that decision. The applicable ordinance provides that a vehicle may be impounded when there is "no other reasonable disposition of the vehicle * * * available." The issue, as framed by defendant, is whether there was any reasonable disposition other than to impound the truck, based on the facts as the officer knew them at the time of her decision to tow. *See State v. Gaunce*, 114 Or App 190, 194, 834 P2d 512, *rev den* 315 Or 271 (1992).

■ ■ The other alternative available to the officer was to leave the truck parked on a public street with the tools unsecured in the back. The officer testified that she believed defendant when "he said it was mom's [car] who, as I recall, lived out in Rhododendron." We take judicial notice of the fact that Rhododendron is a community in Clackamas County approximately 35 miles from the City of Portland, where defendant was arrested. We agree with the trial court's conclusion that, in the light of the fact that the officer would have had to guard the vehicle until defendant's mother arrived, there was no other reasonable alternative to having the truck towed.

■ The dissent would hold that, because she did not make an attempt to call defendant's mother to come and get the truck, and because there is no evidence about the length of time that it would have taken for the mother to have removed the truck, the officer did not comply with the ordinance. That argument implies that the ordinance placed on the officer a responsibility to investigate whether defendant's mother could pick up the truck within a reasonable time before making the decision to tow. We see nothing in the

language of the ordinance that requires an officer to investigate beyond the facts of which she was aware at the time of her decision. Based on the information that defendant had given her, the officer was entitled to infer that the time that she would have been required to wait for the mother to come to Portland would have been considerable. Presumably, her patrol duties required her to be at places other than parked along side the truck for whatever period of time it would take for the mother to arrive. Nothing in the ordinance required the officer to wait until the mother arrived.

The dissent also says that a reasonable alternative would have been to leave the truck on the street. That would have resulted in the contents in the back of the truck being subjected to theft. Moreover, if the dissent is correct, there would always be a "reasonable alternative" to impoundment under the ordinance, and the provision in the ordinance allowing impoundment in the absence of a reasonable alternative would be meaningless. The dissent's assertion also ignores the potential civil liability of the city and the social harm arising from the potential commission of another crime resulting from the city's conduct if the contents were stolen. Based on the information that the officer had, we hold that "no other reasonable disposition of the truck was available," and that the impoundment was lawful.

Defendant's other arguments do not require discussion.

Affirmed.

**De MUNIZ, J.,** dissenting.

Article I, section 9, permits a limited intrusion to conduct an inventory if three requirements are satisfied. The first requirement is that the vehicle must have been lawfully impounded and, if that requirement is not met, the inquiry is over. *State v. Atkinson*, 298 Or 1, 8-9, 688 P2d 832 (1984). Whether police have authority to impound and inventory a vehicle "is a matter for politically accountable officials to decide by laws, ordinances, or delegations of rulemaking authority." 298 Or at 6. The City of Portland has authorized its police officers to impound a vehicle if

"[t]he vehicle was in possession of a person taken into custody by a law enforcement officer and *no other reasonable*

*disposition of the vehicle was available*[.]" PCC § 16.04.020(b)(7). (Emphasis supplied.)

The state had the burden of proving that the officer who arrested defendant did not have a reasonable alternative to impounding his mother's truck. Although the state presented no evidence to satisfy that burden, the majority holds that the officer lawfully impounded the truck. Even if the facts that the majority presumes and takes judicial notice of were true, the record compels the conclusion that the officer should have left the truck where she found it. Because she seized the truck unlawfully, the inventory that she subsequently conducted was also unlawful.

When Officer Ryan arrested defendant, defendant told her that he did not want the truck to be impounded. He explained that the truck belonged to his mother, who lived in Rhododendron, and that she would come to pick it up. Ryan believed defendant about the truck's ownership, but she did not attempt to call his mother. Instead, she decided to impound the truck and began to inventory its contents.[1] She opened the door to the cab and found some balloons in plain view on the seat. On the basis of her training and experience, she suspected that the balloons contained heroin.[2] She seized them and submitted them to the crime lab for testing. The tests showed that they contained tar heroin.[3]

In denying defendant's motion to suppress the heroin, the trial court concluded:

> "There was [*sic*] miscellaneous items of tools that [Ryan] could see that were in plain view and [defendant] said let my mother come and get the rig. She doesn't have to do that. * * * [S]he's not required to sit there and wait for the mother or to call the mother."

The trial court and the majority apparently conclude that the only alternative to impounding the truck was to wait for

---

[1] Ryan was impounding the truck when she seized it with the intent of having it towed. *State v. Gaunce*, 114 Or App 190, 195, 834 P2d 512, *rev den* 315 Or 271 (1992).

[2] The state does not contend that, before Ryan opened the door, the officers had any reason to believe that the truck contained evidence of a crime.

[3] The Portland Police Bureau's inventory guidelines provide that "officers shall not open closed containers nor inventory the contents thereof." Defendant does not contend that the balloons were closed containers or that the removal of their contents violated the established inventory procedure.

defendant's mother to retrieve it and that it would have been unreasonable to do so. That conclusion is erroneous for at least three reasons.

First, the state has failed to present any evidence bearing on the reasonableness of waiting for the mother. The reasonableness of that alternative depends on the length of time that would have been involved weighed against the urgency of Ryan's "patrol duties [that] required her to be at places other than parked along side the truck for whatever period of time it would take for the mother to arrive." 123 Or App at 212. I agree that it would not have been reasonable to expect Ryan and her partner to wait indefinitely for defendant's mother. However, the state offered no evidence about the officers' other duties, which the majority is willing to *presume* required immediate attention. 123 Or App at 212. We cannot presume facts that the state was obligated to prove. Moreover, the record contains no evidence about how far Rhododendron is from the location where Ryan arrested defendant, nor is there any evidence of how long it would have taken defendant's mother to make the trip. The majority takes judicial notice that Rhododendron is 35 miles away. I have serious reservations about taking judicial notice, at the appellate level, of facts in favor of the state. *See State v. Cervantes*, 118 Or App 429, 432 n 2, 848 P2d 118, *rev allowed* 317 Or 485 (1993). Moreover, the record does not indicate whether the officer asked defendant if his mother was in Rhododendron at the time. For all the officer knew, the mother was in Portland and could have been summoned to the scene in moments.

In my view, PCC § 16.04.020(b)(7) imposes a duty to make a reasonable inquiry before concluding that "no other reasonable disposition of the vehicle [other than impounding it is] available." In this case, the officers made no inquiry whatsoever. In the absence of any evidence about how long it would have taken the mother to arrive and what other duties beckoned the officers, the trial court had no basis for concluding that it would have been unreasonable for the officers to wait for her.

Second, the majority ignores the possibility that the mother could have arranged for someone else to retrieve the truck. For all we know, she may have had a friend who lived

on the street where defendant was parked. Defendant might even have parked the truck right in front of that friend's house. The officers did not even try to call defendant's mother. The state did not prove that it would have been unreasonable to wait a few moments for a friend or relative to retrieve the truck.

The state's case rests on its contention that it would have been unreasonable to wait for someone to retrieve the truck, so it was not worth the bother of making any effort or inquiry in that direction. The majority is willing to presume and take judicial notice of every fact that would be necessary to support that position. I am not. The state had the burden of proof and supplied none. That should be the end of the story.

Finally, even if the state had proven everything that the majority is willing to presume, the meager evidence in the record still compels the conclusion that the officers had a reasonable alternative to impounding the truck. Ryan testified that the truck "was legally parked to the side, it wasn't a hazard or anything." Despite defendant's protestations about having the truck towed, Ryan and her partner decided to impound it, because there was "no way of securing those items [that] were in the back of the truck." The officers' concern about the risk of theft to defendant's possessions was reasonable. However, no rule of law precluded defendant from assuming that risk, and he expressed his desire to do so.[4] For that matter, defendant could have erected a sign that said, "Help Yourself." So long as the truck was lawfully parked and was not creating a hazard, the officers had a reasonable alternative to impounding it over defendant's objection. They could simply have left it where it was.

The state failed to establish that "no other reasonable disposition of the vehicle was available." PCC § 16.04.020. The officers had no authority to take the truck into custody. The inventory was therefore unlawful. Or Const, Art I, § 9; *State v. Atkinson, supra*, 298 Or at 9; *State v. Gaunce,*

---

[4] It appears that the majority believes that the arrest deprived defendant of his free will to make that choice. If an arrest deprives a person of all free will, then all post-arrest statements would be inadmissible and any consent that followed an arrest would necessarily be involuntary. We have rejected those propositions long ago.

*supra* n 1, 114 Or App at 193 n 3. The court erred by denying defendant's motion to suppress.

I dissent.