Argued and submitted July 21, reversed and remanded for new trial September 6, petition for review allowed December 26, 1995 (322 Or 420)

# STATE OF OREGON,
*Respondent,*

*v.*

# RAFAEL ROMAN COOK,
*Appellant.*

## (9305-33261; CA A83131)

901 P2d 911

Sally L. Avera, Public Defender, argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals his conviction for felon in possession of a firearm. ORS 166.270. He assigns as error the trial court's failure to suppress evidence obtained during an inventory of the car he was driving when arrested. We reverse and remand.

Portland Police Officer Perkins saw defendant commit a traffic infraction and signalled for him to pull over. Defendant complied by pulling into a service station, partially blocking the gas pumps. When Perkins asked defendant to produce his driver's license and proof of insurance, defendant could not do so. Perkins then requested consent to search defendant's car for drugs and weapons. When defendant refused, Perkins arrested him for failure to carry and present his license and put him in the back of the patrol car.

After defendant's arrest, one of his two passengers "took off running." The other passenger, Bell, was paraplegic and unable to drive. Because the car was blocking the gas pumps and there was no one to whom it could be released, Perkins decided it was necessary to impound and tow the car. Perkins also decided to search the car before it was towed.[1] He began with the trunk. One of his purposes for opening the trunk was to retrieve Bell's wheelchair. When he opened the trunk, Perkins found the wheelchair placed on top of a spare wheel. Under the wheelchair was a towel, and under the towel was a pair of long pants. Although Perkins could tell that there was "obviously * * * something in the leg of the pants," he could not see what it was. He then picked up the pants, looked into the waist area, and could see the butt of a rifle, which, when removed, proved to be an AK-47 assault rifle. He also discovered ammunition and a rifle accessory.

Defendant moved to suppress the evidence found in the trunk, arguing that it was the product of an illegal search in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. In particular, he argued that: (1) the impoundment was not valid because there were other reasonable means to

---

[1] Perkins testified at the suppression hearing that he intended to search the car as a search incident to arrest and as an inventory search. The state does not contend that the search was valid as a search incident to arrest.

secure the vehicle; (2) Perkins' investigation of his car was not an inventory but, rather, a search for crime evidence; and (3) even if Perkins did inventory the car, he deviated from authorized procedures and exercised too much discretion in doing so. The court denied the suppression motion, concluding that Perkins conducted a valid inventory under a Portland Bureau of Police General Order pertaining to impoundment and towing of vehicles.[2] Defendant was subsequently convicted in a stipulated facts trial of being a felon in possession of a firearm.

On appeal, defendant contends that, under *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), and *State v. Custer*, 126 Or App 431, 868 P2d 1363 (1994), the search was not a lawful inventory because it was not conducted pursuant to "extra-executive," *i.e.*, legislative, authorization. The state responds that a Portland ordinance authorizing impoundment of vehicles afforded the necessary authorization for an inventory. The state further contends that, in all events, Perkins' opening of the trunk to remove Bell's wheelchair

---

[2] The Portland Bureau of Police General Order provides, in part:

*"VEHICLES SUBJECT TO TOW*

"Officers may tow a vehicle under the following circumstances:

*"Towing Without Prior Notice Being Mailed to the Registered Owner*: Officers may tow a vehicle without prior notice being mailed to the registered owner when one or more of the following conditions exists:

"1. The vehicle is impeding or is likely to impede the normal flow of vehicular or pedestrian traffic.

"* * * * *

"6. The vehicle was in the possession of a person taken into custody by a law enforcement officer and no other reasonable MANNER OF SECURING the vehicle is available.

"* * * * *

*"REPORTING PROCEDURES*

"* * * * *

"3. Every vehicle towed (except private request tows) shall be inventoried. Officers shall complete the inventory section on the Incident or Custody Report. The inventory shall be conducted as soon as practicable and shall include the entire passenger compartment, uncovered hatchback, unlocked glove box(es) and unlocked trunk. The inventories of locked glove box(es), trunks and covered/locked hatchbacks shall be conducted if keys are available or unlocking mechanisms are provided within the vehicle. The inventory is *not* a search for evidence. Items should be scrutinized to the extent necessary to complete the inventory. While officers may seize evidence of contraband located during the inventory, officers shall *not* open closed containers nor inventory the contents thereof."

was justified either under the emergency aid doctrine or as a "community caretaking function." ORS 133.033.[3]

We first consider whether the search was pursuant to a lawful inventory. In *Atkinson*, the court discussed three requirements of a constitutionally valid inventory. First, the vehicle must be lawfully impounded. Second, an inventory

"must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." 298 Or at 10.

Third, the person conducting the inventory must not deviate from the established policy or procedures.

Defendant argues that the alleged inventory here did not meet *Atkinson's* second requirement. We agree.[4]

Under *Atkinson*, "[p]olitically accountable officials must decide as a matter of policy when, how and for what purposes private property in official custody should be examined." *State v. Willhite*, 110 Or App 567, 572, 824 P2d 419

---

[3] ORS 133.033 provides:

"(1) Except as otherwise expressly prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.

"(2) As used in this section, 'community caretaking functions' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking functions' includes, but is not limited to:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(b) The right to stop or redirect traffic or aid motorists or other persons when such action reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(3) Nothing contained in this section shall be construed to limit the authority of a peace officer that is inherent in the office or that is granted by any other provision of law."

[4] We address this issue despite the fact that defendant raised it for the first time on appeal. *Atkinson*, 298 Or at 11; *State v. Willhite*, 110 Or App 567, 824 P2d 419 (1992).

(1992). That determination is to be embodied in "laws, ordinances, or delegations of rulemaking authority." *Atkinson*, 298 Or at 6. In *Custer*, we concluded that, where the only authority for impounding and inventorying the defendant's car was an internal police policy, the inventory did not meet *Atkinson's* second requirement:

"[I]t is imperative that the state identify a source of extra-executive authorization, such as a statute or an ordinance, that allows * * * law enforcement officers to inventory vehicles under the circumstances presented here and that expressly delineates the purposes and limits of the officers' authority." *Custer*, 126 Or App at 435-36.

The state argues that this case is distinguishable from *Custer* because Portland City Code (PCC) § 16.04.020 embodies the requisite extra-executive authorization. At the time of the impoundment and inventory, that section provided, in part:

"(a)  Authority to tow.  Any vehicle found on any street * * * may be towed, upon the order of a City officer or employee, and taken to a storage area designated by the City, and held at the expense of the owner or person entitled to possession thereof, when:

"* * * * *

"(7)  The vehicle is in possession of a person taken into custody by a law enforcement agency."[5]

The state acknowledges that PCC § 16.040.020 does not expressly refer to inventories of the contents of impounded vehicles, but argues, nevertheless, that the ordinance implicitly authorizes such inventories.

The state's argument rests, ultimately, on the premise that, under *Atkinson*, legislative authorization to impound and tow vehicles necessarily implies authorization to inventory their contents. That premise is false.[6]

In *Atkinson*, the defendant did not challenge the lawfulness of the impoundment of his vehicle. 298 Or at 5 n 3.

---

[5] *Cf. State v. Gaunce*, 114 Or App 190, 834 P2d 512 (1992) (discussing former PCC § 16.04.020 in the context of the lawfulness of an impoundment). In 1994, after the events described here, the Portland City Council enacted an ordinance governing inventories of impounded vehicles. *See* PCC § 14.10.030.

[6] *Cf. Willhite*, 110 Or App at 572 n 6 (declining to reach issue).

Consequently, the court's analysis of the validity of the inventory presumed that the impoundment was lawfully authorized. If, as the state asserts, authority to impound necessarily embraces authority to inventory, *Atkinson's* analysis would have been superfluous; authority to impound would have been enough. Instead, the court explained:

> "[W]here government officials are allowed only limited authority to take control of personal property * * * the officers' authority does not extend to conducting a general inventory of the automobile's contents. However, if statutes, ordinances or other laws provide that overparked cars may be 'impounded,' inventories of the contents of cars so impounded also *may lawfully be authorized*." 298 Or at 9-10 (emphasis supplied).

Thus, where politically accountable officials have authorized impoundments, they *may* also, constitutionally, authorize inventories of impounded property. Here, the Portland City Council, in enacting PCC § 16.04.020, did the former, but not the latter. Because there was no extra-executive authorization for the inventory of defendant's car, the search cannot be sustained as a lawful inventory.

■ The state also argues, in the alternative, that Perkins' actions in opening the trunk and removing Bell's wheelchair were justified under the emergency aid doctrine or the community caretaking function and that Perkins' discovery of the rifle occurred in the course of that conduct. We need not, and do not, decide the applicability of either the emergency aid doctrine or community caretaking function to the facts in this case because, even if Perkins was justified in opening the trunk to retrieve the wheelchair, his own testimony establishes that the rifle was concealed in a pair of pants and could be seen only when he picked up and looked into the waist of the pants. Thus, the weapon was not in plain view, and its discovery did not occur inevitably in the course of removing the wheelchair. *See State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992) (describing requirements for an emergency aid doctrine exception to the warrant requirement, including that the "area or place to be searched is associated with the emergency"). The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.