Argued and submitted March 27, 1996, reversed and remanded March 19, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# ADRIAN KENNETH LAYMAN,
*Appellant.*

## (10-94-07580; CA A87593)

935 P2d 1216

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals his conviction for unlawful possession of a controlled substance. ORS 475.992(4)(b). He assigns error to the court's failure to suppress evidence obtained when officers inventoried the property in his possession during the booking process at a county jail. We reverse and remand.

Police arrested defendant on April 19, 1994, pursuant to a valid warrant and took him to the Lane County Adult Correctional Facility (LCACF). They booked him into that facility under the procedures specified in the LCACF manual. Those procedures included an inventory of the property in his possession. During that inventory, an officer searched defendant's wallet and found methamphetamine.

The state charged defendant with unlawful possession of the methamphetamine. ORS 475.992(4)(b). Defendant moved to suppress the methamphetamine evidence on the ground that the inventory that led to its discovery violated Article I, section 9, of the Oregon Constitution because politically accountable lawmakers had not authorized the inventory, as required by *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984).

The state countered that *State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234, *rev den* 308 Or 660 (1989), established that the state did not have to prove that the LCACF inventory policy had been approved by politically accountable lawmakers. The trial court agreed with the state's reading of *Mundt/Fincher* and denied defendant's suppression motion. Defendant subsequently waived his right to a jury trial and the court found him guilty.

■ The Supreme Court held in *Atkinson* that a police inventory of property "is not inherently 'unreasonable' within the meaning of Article I, section 9,"[1] if it complies with certain

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

requirements. 298 Or at 8. First, the state must lawfully possess the property that it inventories. *Id.* Second, the inventory

"must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory."

*Id.* at 10. Finally, the person conducting the inventory must follow the specified procedures. *Id.*

Defendant argues that the state failed to satisfy the second part of the *Atkinson* test because it failed to demonstrate that the LCACF inventory policy had been authorized by a source outside the executive branch of government. The state maintains that our decision in *Mundt/Fincher* controls this case and that *Mundt/Fincher* holds that the state is not required to identify any source of authority for the inventory policy.

The state is correct that *Mundt/Fincher* rejected a contention that the state had to establish that the LCACF inventory policy had been authorized by officials outside the executive branch. The dissent in *Mundt/Fincher* read *Atkinson* to require that,

"in the first instance, politically accountable officials must adopt the [inventory] rules by laws or ordinances or must expressly delegate rulemaking authority to the [executive] official making the rules."

98 Or App at 416 (Buttler, P. J., dissenting). The majority disagreed, holding that *Atkinson* did not require the state to establish that politically accountable lawmakers had authorized the inventory policy:

"The record need not reflect the legislative process by which an inventory policy was adopted. It is sufficient that the evidence shows that such a policy existed and that it was designed and uniformly administered to eliminate individual discretion on the part of the officer conducting the inventory."

*Id.* at 412 n 3.

The *Mundt / Fincher* majority's position on that issue has been implicitly overruled by our decisions in *State v. Custer*, 126 Or App 431, 868 P2d 1363 (1994), and *State v. Cook*, 136 Or App 525, 901 P2d 911, *rev allowed* 322 Or 420 (1995). In *Custer*, the police arrested the defendant and then impounded and inventoried his vehicle pursuant to a Dallas Police Department inventory policy. 126 Or App at 433. We held that the police department's policy could not "properly serve as the source of authority for the inventory" and that the state had to identify a source outside the executive branch for that authority. *Id*. at 435. Because the state had not done that, we concluded that the evidence obtained from the inventory should have been suppressed. *Id*. at 436. We reached the same conclusion in *Cook*, explicitly holding that the second part of the *Atkinson* test requires inventory policies to be authorized by officials outside the executive branch. 136 Or App at 530.

The state argues, however, that *Custer* and *Cook* were wrongly decided. In its view, to the extent that *Atkinson* requires it to identify a source of the authority for a particular inventory policy, that source can include politically accountable *executive* officials. The state argues, therefore, that the Lane County Sheriff, who is an elected official, could authorize the inventory policy. We reject that reading of *Atkinson*. In *Atkinson*, the Supreme Court stated that "politically accountable officials" should establish appropriate inventory policies "by laws, ordinances, or delegations of rulemaking authority." 298 Or at 6. While the phrase "politically accountable officials" does not, by its nature, exclude elected executive officials, the manner through which the officials are to establish the relevant policies, which is "by laws, ordinances, or delegations of rulemaking authority," indicates that the phrase refers to officials outside the executive branch.

The Supreme Court endorsed that reading of "politically accountable officials" in *State v. Holmes*, 311 Or 400, 404 n 4, 813 P2d 28 (1991). There, the court equated the phrase with "politically accountable lawmaker." It stated:

"The phrase 'politically accountable lawmaker' is taken from *Nelson v. Lane County*, [304 Or 97, 105, 743 P2d 692

(1987) (plurality opinion)], where this court stated: 'Authority for administrative searches may be, and often is, provided by politically accountable lawmakers.' *See also State v. Atkinson*, 298 Or 1, 6, 688 P2d 832 (1984) (phrase 'politically accountable officials' used).

"Potential sources of proper authorization by politically accountable lawmakers would include, for example, a statute enacted by the Oregon Legislature or by the electorate through the initiative or referendum process, a regulation based on a statute, a city or county charter provision, a city or county ordinance, or a policy or procedure promulgated pursuant to authority."

*Id*. Thus, for an inventory policy to satisfy the second requirement of the *Atkinson* test, the state must identify a source of authority for the policy outside the executive branch. The Lane County Sheriff is not such a source.

■    Finally, the state argues that even if *Atkinson* requires it to identify a source of authority outside the executive branch for the LCACF inventory policy, it has done so here. Local governments, not the state government, decide whether to acquire and operate local correctional facilities such as LCACF. Thus, the authority to establish an inventory policy for a local correctional facility could be expected to originate from the lawmaking officials of the local government who decide to operate such a facility. In this case, however, the state argues that the state legislature has provided, through ORS 169.076 and ORS 133.455, the authority for local correctional facilities to adopt inventory policies.[2] We disagree.

ORS 169.076 specifies standards for local correctional facilities. It must be read in the light of two subsequent statutes, ORS 169.077 and ORS 169.078, which address, respectively, standards for lockup facilities and for temporary holding facilities. The variations in the standards established by those statutes reflect the different purposes of the

_____

[2] ORS 133.455 specifies the minimum procedures a corrections authority must follow in accounting for "money or other valuables" it takes from people in custody. We have held that ORS 133.455, alone, does not provide authority for an inventory policy. *State v. Lawrence*, 58 Or App 423, 431 n 8, 648 P2d 1332, *rev den* 293 Or 801 (1982).

facilities. It is evident that the statutes are intended to establish minimum standards for the facilities in order to protect the welfare of the people incarcerated in them. The statutes are not intended to supersede the role of local governments in deciding the type of facilities they wish to operate and the authority they wish to give local officials to run them.

Still, the state argues that ORS 169.076 "is sufficiently broadly worded" to constitute the authorization for an inventory policy. *See AFSCME Local 2623 v. Dept. of Corrections,* 315 Or 74, 843 P2d 409 (1992). Specifically, it points to ORS 169.076(2)(f), which provides that a facility must outline its policy on "personal property accountability." That provision does not authorize a facility to take property. Instead, it merely requires that a policy on personal property accountability exist and, if the facility has authority to take property, that that policy comport with ORS 133.455. The fact that neither ORS 169.077 nor ORS 169.078 contains provisions equivalent to those in ORS 169.076 on which the state relies for authority for an inventory policy, while each type of facility addressed by those statutes has an equivalent interest in having an inventory policy, supports our conclusion that ORS 160.076 is not intended to authorize the adoption of such a policy.

In summary, the state had to demonstrate that the LCACF inventory policy had a source of authority outside the executive branch. ORS 133.455 and 169.076 are not such a source. The state failed to meet its burden, and the methamphetamine evidence should have been suppressed.

Reversed and remanded.