Argued and submitted September 6, 1996; reassigned February 3; resubmitted June 25, decision of Court of Appeals reversed, judgment of circuit court reversed, case remanded to circuit court for further proceedings July 2, 1998

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JAMES DANIEL BOONE,
*Respondent on Review.*

(CC 93-2156-CR; CA A84673; SC S42791)

959 P2d 76

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General.

Michael Ratliff, of Parks & Ratliff, Klamath Falls, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

VAN HOOMISSEN, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

■ The principal issue in this criminal case is whether a city ordinance that authorizes police to impound a car also authorizes them to conduct an inventory search of the car's contents. The Court of Appeals held that the city ordinance did not constitute an authorization from an extra-executive, politically accountable body to conduct an inventory search. *State v. Boone*, 136 Or App 614, 901 P2d 990 (1995) (citing *State v. Cook*, 136 Or App 525, 901 P2d 911 (1995), which so held with respect to a similar inventory search). We allowed review and reverse the decision of the Court of Appeals.

This court reviews for errors of law. We are bound by the trial court's findings of historical fact if evidence supports them. *State v. Stevens*, 311 Or 119, 126-27, 806 P2d 92 (1991). Our function is to decide whether the trial court applied legal principles correctly to those facts. *Id.* (citation omitted).

A Klamath Falls police officer lawfully impounded defendant's car pursuant to Klamath Falls City Code section 6.102, which provides:

> "Whenever a traffic citation is issued, or a physical arrest made for a violation of the Vehicle Code of the State of Oregon, or local traffic regulations, and the driver of such motor vehicle does not possess a valid operator's license, is driving on a suspended or revoked license, or is without proof of liability insurance as required by the Oregon Vehicle Code, the vehicle shall be impounded and towed by a licensed towing company to the towing company's garage. The towing and storage of a vehicle pursuant to this Section shall create a lien against the vehicle and any property left within the vehicle in favor of the towing company as provided by ORS 87.152."

The Klamath Falls Police Department (department) has a written policy requiring that if police impound a car they must conduct an inventory of the car's contents before it is towed. The policy requires that the inventory be conducted using a department inventory checklist. Pursuant to that department policy and the implementing checklist, the officer conducted an inventory search of the contents of defendant's car.

During the inventory search, the officer discovered two bindles of methamphetamine between the front seats of the car. Police arrested and searched defendant and found more methamphetamine on his person. The present charges followed.

Before trial, defendant moved to suppress evidence of the controlled substances the police had found in his car and on his person. After a hearing, the trial court found, in part:

"The Klamath Falls Police Department has a written policy that whenever a vehicle is impounded, the officer must conduct an inventory search of the vehicle before it is towed.

"[Officer] Rote had a checklist form issued by the Klamath Falls Police Department. The purpose of the checklist is to remind the officer of all the different areas of a vehicle he is required to search pursuant to the inventory search policy.

"The inventory search policy is an administrative program designed and systematically administered so that the officer has no discretion on when, what or whether to search.

"Office[r] Rote searched the automobile before the arrival of the towing company. Rote followed the checklist and searched defendant's car, finding controlled substances in clear plastic baggies between the two front seats."

Relying primarily on *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), the trial court ruled that the evidence must be suppressed, because a politically accountable body had not authorized the department's inventory policy and, therefore, that the search violated Article I, section 9, of the Oregon Constitution.[1]

---

[1] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

On appeal, the state argued that, although Klamath Falls City Code section 6.102 does not expressly authorize inventory searches, such authorization is implicit in the ordinance. The Court of Appeals disagreed, relying on its contrary holding in *Cook*, discussed below. We allowed the state's petitions for review in the present case and in *Cook*.

On review, the state again argues that a police department's vehicle-inventory policy need not be approved by a politically accountable legislative or quasi-legislative body, provided that the initial impoundment of the vehicle is authorized by a politically accountable body and that the inventory search was conducted pursuant to a policy that is properly authorized by the police department and is designed and systematically administered so that the inventory involves no exercise of discretion by the officer conducting the inventory search. Defendant responds that, without explicit authorization from an extra-executive, politically accountable body, a police agency has no authority to adopt an inventory search policy. Therefore, defendant reasons, the inventory search in this case was unauthorized.

Because it is pivotal to our analysis, we first examine the Court of Appeals' decision in *Cook*. In that case, the defendant was stopped by Portland police for a traffic infraction and was arrested when he was unable to produce a valid driver's license. The car was impounded. As in the present case, an ordinance authorized such an impoundment, although, unlike here, the Portland ordinance did not create a lien in favor of the towing company. Pursuant to a written policy of the Portland Police Bureau, the officer conducted an inventory search of the defendant's car and, during that search, discovered evidence that led to criminal charges being filed against the defendant. The trial court denied the defendant's motion to suppress the evidence.

On the defendant's appeal in *Cook*, the Court of Appeals reversed. Relying primarily on *Atkinson*, that court held:

"[W]here politically accountable officials have authorized impoundments, they *may* also, constitutionally, authorize inventories of impounded property. Here, the Portland City Council, in enacting PCC § 16.04.020, did the former, but

not the latter. Because there was no extra-executive authorization for the inventory of defendant's car, the search cannot be sustained as a lawful inventory." 136 Or App at 531 (emphasis in original).

In *Cook*, as in the present case, the state argued to the Court of Appeals that, although the Portland ordinance did not *expressly* authorize inventory searches of impounded cars, it *implicitly* authorized such searches. The Court of Appeals rejected that argument, holding that authority for an inventory search had to be given explicitly by an extra-executive, politically accountable body. *Cook*, 136 Or App at 530-31.

On review, both parties rely on *Atkinson*. At the outset of its discussion of whether an inventory search implicates Article I, section 9, the *Atkinson* court stated:

"It is not our function to decide as a matter of policy how, and for what purpose, automobiles or other private property that come into official custody should be examined. *That is a matter for politically accountable officials to decide by laws, ordinances, or delegations of rulemaking authority.* Our role * * * is to assure that such policies and procedures as are adopted do not violate constitutional guarantees." 298 Or at 6 (emphasis added).

The *Atkinson* court held that a police inventory policy adopted by "responsible policy makers * * * is not inherently 'unreasonable' within the meaning of Article I, section 9," if it complies with certain requirements. *Id.* at 8.[2]

*Atkinson's* first requirement is that the car must be impounded lawfully. *Id.* at 8. *Atkinson* emphasizes that, when determining the *source* of authority for the custody, or seizure, of a car, the *scope* of that authority also is an important consideration, relating both to the authority to seize and the authority to search the car. In that regard, the court provided the following examples:

"ORS 483.351 *et seq*[.], authorizes police officers to take custody of 'abandoned' vehicles. The statute also authorizes

_____

[2] This court has explained that "[n]ot all government intrusions * * * trigger Article I, section 9, protections." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986).

a lien on the vehicle *and its contents* to pay storage and towing charges. The police may then dispose of both the vehicle and its contents. Because of the broad statutory authority conferred, a detailed inventory of the contents of the vehicle in preparation for its sale would be permitted. * * * [Emphasis in original.]

"Similarly, under ORS 133.663, if the possessory rights in items seized are disputed, the court may 'impound' the items seized, give notice and hold a hearing to determine their ownership. *Whenever the court 'impounds' items seized pursuant to statutes such as this, a full inventory of their contents is permissible, subject to the conditions discussed* [later in the *Atkinson* opinion]. [Emphasis added.]

"By contrast, where government officials are allowed only limited authority to take temporary control of personal property—such as to move an automobile after a traffic accident—the officers' authority does not extend to conducting a general inventory of the automobile's contents. However, if statutes, ordinances, or other laws provide that overparked cars can be 'impounded,' inventories of the contents of cars so impounded also may lawfully be authorized, including inspection and inventorying the contents of unlocked glove or trunk compartments and open containers as set forth [later in the *Atkinson* opinion]." *Id.* at 9-10 (footnote omitted).

In short, under *Atkinson*, the scope of the authority to exercise control over a car may be instructive in determining whether the police also may have implied authority to conduct an inventory search of the car's contents. As illustrated by the second example quoted above, *Atkinson* determined that explicit authorization to impound a car also implicitly authorizes the police to conduct an inventory search of the car.

■       *Atkinson* sets forth a second requirement:

"[The inventory] must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10 (citations omitted).

Further, if the evidence shows that the inventory search deviated from the established policy or procedures of the particular police agency, the search should be deemed invalid. *Id.*

> "The scope of the inventory must be limited to that—an inventory. Objects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory." *Id.*

Defendant does not challenge the lawfulness of the Klamath Falls ordinance or of the impoundment of his car pursuant to it. Following the *Atkinson* methodology, therefore, the first question in this case is whether the City of Klamath Falls' ordinance, which explicitly granted police the authority to impound, tow, and store any car when its operator did not have a valid operator's license, implicitly authorized the inventory search of defendant's car. Based on the foregoing analysis, we conclude that the inventory search of defendant's car satisfied *Atkinson*'s requirement that an inventory search must be "properly authorized." We hold that authority to conduct the inventory search in these circumstances is implied from the authority granted to the department by the city to impound defendant's car.

■ That brings us to the second question posed by this case: whether *Atkinson*'s requirement that an inventory search be conducted pursuant to a "properly authorized administrative program" may be satisfied by an inventory policy adopted by the police agency itself. From our conclusion that authority to conduct an inventory search may be implied from authority granted by the city to impound, it follows that a law enforcement agency itself may adopt an inventory policy, provided that the policy comports with *Atkinson*'s other requirements. Just as police officers are required to adhere to inventory policies enacted by a city, county, or state, they also are required to adhere to inventory policies promulgated by their own agencies. An inventory policy, properly adopted by a police agency and followed by its officers, protects citizens' rights as effectively as would the same policy, enacted by politically accountable officials. Of course, any policy is subject to judicial review "to assure that

such policies and procedures as are adopted do not violate constitutional guarantees." *Atkinson*, 298 Or at 6.

■    Our final task is to determine whether the administrative program promulgated by the department satisfies *Atkinson*'s requirement that the program be "designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10. We conclude that the department's program satisfies that requirement.

For the reasons explained above, we disagree with the contrary conclusions reached by the Court of Appeals in *Cook* and with that court's reliance on *Cook* in affirming the judgment of the trial court in the present case.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.